IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § | |
| Plaintiff, | § § | Civil Action No.: |
| v. | § § § | **SEALED** |
| | § | FILED UNDER SEAL |
| KENNETH W. CRUMBLEY, JR., and SEDONA OIL & GAS CORPORATION | § § § | 3-16CV-0172L |
| Defendants | § § | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendants Kenneth W. Crumbley, Jr. ("Crumbley") and Sedona Oil & Gas Corporation ("Sedona") (collectively, "Defendants") and would respectfully show the Court as follows:

### I.
### SUMMARY

1. From at least June 2013 to the present, Defendants have carried on a fraudulent scheme, and made materially false and misleading statements and omissions to potential and actual investors, in connection with the offer and sale of investments in six investment programs involving oil and gas wells in Kentucky, Tennessee, and Texas.

2. Through their fraudulent offerings, Defendants raised at least $3.3 million from at least 55 investors located across the United States. In offering documents and other communications with investors, they, among other things:

- Falsely represented that investors' funds would be spent to drill, test, and complete oil and gas wells when in fact nearly 63% of such funds were misappropriated on undisclosed expenditures;

- Touted overly optimistic and unfounded anticipated oil and gas production from the subject wells while omitting to disclose the non-production of surrounding and nearby wells;

- Falsely represented that investors could expect annual returns ranging from 37% to 276%; and

- Misrepresented monthly investment revenue sums paid to investors.

3. Crumbley and Sedona continue to raise funds from new investors. Additionally, they are actively obstructing the Commission's ability to gather relevant information by (a) destroying and disposing of relevant evidence; and (b) threatening Sedona employees with termination should they speak with Commission staff.

4. Defendants have offered and sold securities in violation of the antifraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act of 1933 ( "Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ( "Exchange Act") and Rule 10b-5 thereunder. Additionally, Crumbley violated Section 20(b) of the Exchange Act and Rule 21F-17 thereunder and is further liable under Exchange Act Section 20(a) as a Sedona control person. Unless Defendants are temporarily, preliminarily, and permanently enjoined by the Court, they will continue to violate the federal securities laws.

5. To protect the public from any further fraudulent activity and harm, the Commission brings this action against Defendants seeking: (i) temporary emergency and preliminary relief; (ii) permanent injunctive relief; (iii) disgorgement of ill-gotten gains resulting from Defendants' violations of the federal securities laws; (iv) accrued prejudgment interest on those ill-gotten gains; and (v) civil monetary penalties.

## II.
## JURISDICTION AND VENUE

6. Defendants offered and sold purported oil and gas joint venture interests, which investments constitute securities, and/or did offer and sell investment contracts, under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

7. The Commission brings this action under Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]. The Commission seeks the imposition of civil penalties pursuant to Section 20(d)(2)(C) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3)(B)(iii) of the Exchange Act [15 U.S.C. §§ 78u(d)].

8. This Court has jurisdiction over this action under Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa] because Defendants directly or indirectly made use of the means or instrumentalities of commerce and/or the mails in connection with the transactions described herein. Venue is proper under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of Defendants' acts, practices, transactions, and courses of business alleged herein occurred within this judicial district.

## III.
## DEFENDANTS

9. Sedona is a Texas corporation with its principle place of business in Dallas, Texas. Sedona sponsors oil and gas production and drilling programs. Neither Sedona nor its securities are registered with the Commission in any capacity. It is the subject of numerous state regulatory orders for offering unregistered securities in Virginia, Utah, California, Pennsylvania,

and Wisconsin. *See Virginia, ex rel., State Corp. Comm'r v. Sedona Oil and Gas Corp. and Kenneth W. Crumbley*, Settlement Order, Commonwealth of Virginia, State Corporation Commission, Case No. SEC-2009-00124 (Apr. 9, 2010); *In Re Sedona Oil & Gas Corp., et al.*, Stipulation and Consent Order, Division of Securities of the Department of Commerce of the State of Utah, Docket Nos. 50033-50037 (June 13, 2007); *Sedona Oil & Gas Corporation, et al.*, Desist an Refrain Order, State of California, Business, Transportation and Housing Agency, Department of Corporations, (Mar. 30, 2007); *Sedona Oil & Gas Corp., et al.*, Findings of Fact, Conclusions of Law and Order, Pennsylvania Securities Commission (Mar. 14, 2006); *In Re Sedona Oil & Gas Corp., et al.*, Petition for Order, Division of Securities Department of Financial Institutions, State of Wisconsin. File No.: S-01056(EX) (June 14, 2001). Among these prior proceedings, Utah's Division of Securities determined in 2007 that Sedona committed securities fraud by offering and selling securities while failing to inform an investor of administrative actions against the company and its officers.

10. Kenneth W. Crumbley, Jr., age 55, resides in Dallas, Texas. He founded Sedona in August 1992, serves as its President, and controls its operations. Before founding Sedona, Crumbley held various positions at public and private oil and gas companies from 1989 through 1992. Crumbley previously held Series 22 and 63 FINRA qualifications.

## IV.
## FACTS

A. **DEFENDANTS OFFERED AND SOLD SECURITIES IN CONNECTION WITH SIX OIL AND GAS INVESTMENT PROGRAMS.**

11. Since at least June 2013, Sedona has offered and sold securities in six oil and gas investment offerings (collectively, "Sedona Offerings"), representing that investors will profit from the sale of oil and gas from the subject wells and obtain various tax benefits.

12. Through the Sedona Offerings – individually known as Crossroads Joint Venture ("Crossroads"), Sells #2K Melton Joint Venture ("Sells #2K"), Roy Rauch #2 Joint Venture ("Roy Rauch #2), Roy Rauch #3 Joint Venture ("Roy Rauch #3"), Sells #3K and #4K Joint Venture ("Sells #3K") , and Collins Joint Venture ("Collins") – Defendants raised approximately $3.3 million through October 2015 from at least 55 investors located across the United States.

13. Defendants identified prospective investors through lead lists Crumbley purchased, targeting elderly male investors. Sedona's sales staff, the majority of whom have extensive criminal backgrounds, solicited investments through cold calls using scripts prepared, and provided to them, by Crumbley.

14. Acting under Crumbley's supervision and direction, Sedona sent potential Sedona Offerings' investors offering documents, including private placement memoranda ("PPMs") and brochures describing the Sedona Offerings, identifying the location of each proposed well and emphasizing potential profits.

15. Sedona required investors in the Sedona Offerings to sign joint venture agreements ("JVAs") appointing Sedona managing venture. The JVAs purport to give investors control over the affairs, property, business, and operations of the Sedona Offerings, but such control was illusory. In reality, investors signed turnkey contracts while Sedona (a) did not discuss the nature of the JVAs or joint ventures with investors; (b) retained and exercised day-to-day control of the Sedona Offerings; (c) invited, and expected investors to rely upon, Crumbley's over 30 years of experience in the oil and gas industry and his unique experience and aptitude; (d) did not provide a way for investors to communicate with, or even identify, each other.

**B.     DEFENDANTS MADE MATERIAL MISREPRESENTATIONS AND OMISSIONS IN CONNECTION WITH THE OFFER, PURCHASE, AND SALE OF SECURITIES.**

16. Defendants' made materially false and misleading statements and omissions orally and in writing in connection with the Sedona Offerings.

### i.   Defendants Made Material Misrepresentations and Omissions Regarding Their Use of Investor Funds and Misappropriated Investor Funds.

17. In PPMs for the Sedona Offerings, Defendants presented a chart showing that all investor funds would be used to drill, test, and complete subject wells.

18. In recorded telephone calls with potential investors in the Sedona Offerings, Sedona sales personnel stated, using scripts or other information provided by Crumbley, and Crumbley himself reiterated, that investor funds would be used to drill, test, and complete wells. Sedona staff further falsely claimed that Sedona's mark-up on such costs was as low as 10%.

19. In reality, of the $3.3 million Defendants raised in the Sedona Offerings, they only spent approximately $1 million on well-related expenses. They transferred the remainder, more than $2.1 million, into Sedona's operating and revenue bank accounts. In those accounts, Sedona commingled investor funds received across all six Sedona Offerings along with funds Sedona obtained from other sources. Defendants never disclosed to investors that they aggregated and commingled their funds.

20. Contrary to their written and oral promises to commit investor funds to drilling, testing, and completing wells in the Sedona Offerings, Defendants misappropriated commingled investor funds to pay for, among other things: Sedona's daily expenses (at least $930,000), repayment of an undisclosed loan from another entity controlled by Crumbley ($344,000), personal expenses of Crumbley and his family ($790,000), Sedona's legal expenses ($295,000),

and to pay "returns" to investors in projects other than the Sedona Offerings (at least $35,000). Defendants well knew that none of these expenditures were disclosed to investors.

21. Crumbley admitted under oath that it is "possible" he used Sedona credit cards and funds in the company's operating account to cover non-business expenses including travel for him and his family, which type of expenditures were confirmed by Sedona's bank records.

22. CTX Energy LLC ("CTX"), formed in Texas in August 2012, is controlled and operated by Crumbley. Between December 2012 and October 2015, CTX expended approximately $327,000 in (a) direct transfers from a CTX Energy bank account to Sedona's operating account; and (b) paying bills on Sedona's behalf. This was done purportedly to permit Sedona to cover certain business and legal expenses. Sedona later transferred approximately $344,000 back to CTX between July 2013 and June 2015, resulting in an over-repayment of approximately $17,000. Investors in the Sedona Offerings were never told that Sedona could not meet its own expenses or that their funds would be used, in part, to repay undisclosed loans from CTX.

23. Sedona's credit card statements show that a significant portion of the credit card charges were for personal expenses, including restaurants, grocery, medical, dry cleaning, auto and retail expenses and for travel for Crumbley and his family. For example, there were airfare charges for Crumbley's family to Cabo San Lucas, charges to Beauty Corner, Park Cities Ford, Jos A Bank, and Neiman Marcus.

24. The terms of the Sedona Offerings' PPMs and JVAs permit Sedona to charge a monthly "administrative fee," ranging from $1,000 to $2,000, and to retain as "additional compensation" – its profit – the difference between investors' "turnkey" drilling and completion costs presented to investors and the "actual" costs of drilling, testing and completing the subject

wells. Unbeknownst to investors and to glean more money from them, Crumbley arbitrarily established inflated turnkey prices across all six Sedona Offerings, which were not based on any contract or other agreement with well operators.

25.     Additionally, Defendants spent investor funds before incurring the actual costs to drill, test, and complete well projects in the Sedona Offerings.  Because the relevant PPMs define "additional compensation" as the difference between *turnkey* drilling and completion prices and the *actual* cost of drilling and completion operations, there was no way for Sedona to calculate its profit until it actually incurred all such costs.  Defendants never informed investors that they routinely spent their funds on costs unrelated to drilling, testing, completing, or any other well-related work– or that they began spending their funds before they had even started paying the actual well operators.

      ii.     **Misrepresentations and Omissions Regarding Mineral Production and Investment Returns.**

26.     Along with PPMs, Defendants provided marketing materials regarding the Sedona Offerings to potential investors.  Defendants knew that these materials falsely touted (1) potential annual returns between 37% and 276%; (2) successful production from nearby wells; (3) reserve potential of up to 100,000 to 150,000 barrels of oil per project; (4) anticipated production rates of 25 to 150 barrels of oil per day; and (5) geologist reports endorsed each prospect.

27. For example, in touting the Roy Rauch #2 and Roy Rauch #3, for which Sedona sought to raise $600,000 and $768,000 respectively, Sedona projected production rates from 25 to 75 barrels per day (with an additional 50 to 300 Mcf[1] of natural gas per day at #3).

28. In reality, as Crumbley and Sedona knew, the Roy Rauch wells were surrounded by dry holes. The immediate area was home to 13 additional wells, 11 of which had shown absolutely no production. Defendants failed to disclose the abysmal results of the nearest neighbors of the Roy Rauch wells to any investors.

29. Similarly, in touting the six wells associated with the Collins Joint Venture, for which Sedona sought to raise $628,992, Sedona projected production rates from 50 to 75 barrels per day and claimed the wells had a reserve potential of 50,000 to 150,000 barrels of oil. Such reserve and production, Sedona told investors, would earn annual rates of return between 37% and 75% for investors.

30. But as Crumbley and Sedona knew, 11 dry wells already stood on the areas immediately surrounding the Collins Joint Venture wells. Further, Crumbley and Sedona knew that the production rates were overstated compared to actual well production. From February 3, 2015 to November 11, 2015, the Collins project, consisting of at least 4 wells, produced a maximum amount of approximately 933.53 barrels of oil over a period of approximately 282 days. This equates into a daily production from Collins of approximately 3.31 barrels of oil per day. Evenly distributing the oil production between four wells yields approximately 0.827 barrels of oil per well per day. Defendants never disclosed these material facts to investors in the Sedona Offerings.

---

[1] Mcf is a unit of volume equal to 1,000 cubic feet.

### iii. Defendants Reiterated and Added to Their Misrepresentations and Omissions in Recorded Calls.

31. Among more than 71,000 incoming and outgoing telephone calls Sedona recorded between July 2014 and May 2015, Sedona employees acting under Crumbley's direction used high pressure sales tactics with potential investors, including claims that the projects had few remaining interests, and adopted fake accents, aliases, and titles in an effort to take on greater importance, or establish rapport, with prospective investors.

32. Sedona's recorded calls also establish that Crumbley personally misled potential investors by, among other things, falsely (a) claiming that Sedona paid over $200,000 a month in revenues to investors; (b) stating that all investor funds would go into the well projects; (c) overstating potential production; (d) making unfounded and baseless assertions that the drilling projects would make money; and (e) minimizing prior actions brought by state securities regulators against Sedona and himself. None of these material statements were true.

33. Defendants knew these statements were false when they made them. For instance, while Sedona and Crumbley told investors that Sedona paid in excess of $200,000 a month in revenues to investors, they were aware that between June 2013 and October 2015 Sedona only distributed approximately $39,400 to all investors in the Sedona Offerings. Including proceeds distributed to investors in earlier offerings, Sedona only distributed a total of approximately $458,000 to all investors between June 2013 and October 2015.

34. Despite this awareness, in recorded calls, Sedona's sales staff, under the close supervision of Crumbley, also told investors they would "absolutely" make a profit, were "guaranteed" to obtain production, and the Sedona Offerings were "slam dunks" and "like shooting fish in a barrel." They compared Sedona Offerings to the "Beverly Hillbillies" because, they claimed, oil seeped out of the ground and into nearby creeks.

35. Sedona's sales staff also falsely claimed they invested in the Sedona Offerings, including one salesman who falsely claimed he invested $100,000 of his own money in the Collins offering.

### iv. Ongoing Fraud, Destruction of Evidence and Efforts to Impede the SEC.

36. On May 21, 2015, the staff of the Commission served an investigative subpoena on Sedona and Crumbley. That subpoena called for the production of documents relevant to Sedona's Oil and Gas business since January 1, 2010.

37. On May 21, 2015, the staff of the Commission also sent Crumbley a letter directing Sedona to preserve and retain documents and data relevant to the investigation being conducted by the staff, including documents created on or after January 1, 2010 relating to all offerings of oil and gas interests conducted by Sedona.

38. On June 9, 2015, Crumbley testified under oath before the Commission and claimed that he was preserving, and would continue to preserve, relevant documents.

39. On June 29, 2015 Crumbley acknowledged receipt of the Commission's May 21, 2015 document preservation letter by signing it and returning a copy to Commission staff.

40. On January 5, 2016, the Commission received information that Sedona and Crumbley were actively destroying documents called for by the Commission's subpoena and covered by its May 21, 2015 document preservation letter.

41. On January 12, 2016 and January 13, 2016, staff of the Commission confirmed that Sedona has in fact destroyed and discarded documents relevant to the Commission's investigation, including bank records, investor lists, sales pitch scripts, and other relevant documents.

42. On January 13, 2016, Crumbley convened a meeting of Sedona employees during which he threatened to fire those who spoke with, or in the future speak with, Commission staff.

## V.
## CLAIMS FOR RELIEF

### FIRST CLAIM
### Violations of Section 17(a) of the Securities Act
(against Sedona and Crumbley)

43. The Commission repeats and re-alleges Paragraphs 1 through 42 of the Complaint as if fully set forth herein.

44. By engaging in the conduct described herein, Defendants directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means and instrumentalities of interstate commerce or of the mails:

(a) employed devices, schemes or artifices to defraud;

(b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

45. With regard to their violations of Section 17(a)(1) of the Securities Act, Defendants acted intentionally, knowingly or with severe recklessness with respect to the truth. With regard to their violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act, Defendants acted at least negligently.

46. By engaging in this conduct, Defendants violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. §§ 77q].

## SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
**(against Sedona and Crumbley)**

47. The Commission repeats and re-alleges Paragraphs 1 through 42 of the Complaint as if fully set forth herein.

48. By engaging in the conduct described herein, Defendants directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly:

(a) employed devices, schemes, and artifices to defraud;

(b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities and upon other persons.

49. Defendants engaged in this conduct intentionally, knowingly or with severe recklessness with respect to the truth.

50. By engaging in this conduct, Defendants violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## THIRD CLAIM
### Control Person Liability Under Section 20(a) of the Exchange Act
### (against Crumbley)

51. The Commission repeats and re-alleges Paragraphs 1 through 42 of the Complaint as if fully set forth herein.

52. Defendant Sedona violated and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder as alleged above.

53. At all relevant times, Defendant Crumbley directed and controlled Sedona's management and policies, including the conduct of its other representatives, and was a controlling person of Sedona and its representatives under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)]. Defendant Crumbley was a culpable participant in the fraudulent conduct described above and knowingly or recklessly induced many of the material misrepresentations and misstatements alleged herein.

54. Defendant Crumbley is liable as a controlling person under Section 20(a) of the Exchange Act for Sedona's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and unless enjoined will again violate this provision and rule.

## FOURTH CLAIM
### Violations of Section 20(b) of the Securities Exchange Act
### (against Crumbley)

55. The Commission repeats and re-alleges Paragraphs 1 through 42 of the Complaint as if fully set forth herein.

56. By his conduct as alleged above, Defendant Crumbley, directly and indirectly, acted through and used another person or entity to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

57. In acting through and using another person or entity to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Defendant Crumbley acted intentionally, knowingly or with severe recklessness with respect to the truth.

58. By engaging in this conduct, Defendant Crumbley violated, and unless enjoined will continue to violate, Sections 10(b) and 20(b) of the Exchange Act and Rule 10b-5 thereunder.

## FIFTH CLAIM
### Violations of Rule 21F-17 of the Securities Exchange Act
(against Crumbley)

59. The Commission repeats and re-alleges Paragraphs 1 through 42 of the Complaint as if fully set forth herein.

60. While staff of the Commission was investigating Crumbley and Sedona in connection with possible securities violations, Crumbley threatened to terminate Sedona employees who spoke with, or in the future speak with, regulatory authorities including the Commission.

61. By his conduct as alleged above, Defendant Crumbley took action to impede his employees from communicating directly with the Commission staff about a possible securities law violation.

62. By engaging in this conduct, Defendant Crumbley violated Rule 21F-17 of the Exchange Act.

## VI.
### RELIEF REQUESTED

For these reasons, the Commission respectfully requests that the Court enter a judgment:

(a) Temporarily, preliminarily, and permanently enjoining Defendants and their agents, servants, employees, attorneys and all persons in active concert or participation with

them who receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly Section 17(a) of the Securities Act [15 U.S.C. §§ 5 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b), 78t(a) and 78t(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and temporarily, preliminarily, and permanently enjoining Defendant Crumbley and his agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, from violating, directly or indirectly, Section 20(b) of the Exchange Act [15 U.S.C. §§ 78j(b), 78t(a) and 78t(b)].

(b)     Temporarily, preliminarily, and permanently enjoining Crumbley from directly or indirectly, including but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security provided, however that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

(c)     Permanently enjoining Crumbley from directly or indirectly violating Exchange Act Rule 21F-17.

(d)     Ordering Defendants to disgorge all ill-gotten gains and/or unjust enrichment realized by each of them, plus prejudgment interest;

(e)     Ordering each Defendant to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

(f)     Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

(g)     Granting all other relief to which the Commission may be entitled.

Dated: January 21, 2016

Respectfully submitted,

/s/ Matthew J. Gulde

MATTHEW J. GULDE
Illinois Bar No. 6272325
DAVID REECE
Texas Bar No. 24002810
United States Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
Ph: 817-978-1410
Fax: 917-978-4927
guldem@sec.gov

COUNSEL FOR PLAINTIFF UNITED STATES
SECURITIES AND EXCHANGE COMMISSION

JS 44-TXND (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Securities and Exchange Commission

**DEFENDANTS**
Kenneth W. Crumbley, Jr. and Sedona Oil & Gas Corporation

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

3-16CV-0172L

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

RECEIVED
JAN 21 2016
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[X] 1  U.S. Government Plaintiff
[ ] 2  U.S. Government Defendant
[ ] 3  Federal Question *(U.S. Government Not a Party)*
[ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 400 State Reapportionment |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 410 Antitrust |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [X] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Sec 5 (a)&(c),17(a) Securities Act [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)] Sec 10(b) Exchange Act [15 U.S.C.§78j(b)]

Brief description of cause:
Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Secs 20 (a)&(b)Exchange Act[15 U.S.C. §§ 78t(a)&(b)]

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes  [ ] No

## VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 01/21/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or a similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Attorney Signature.** Date and sign the civil cover sheet.