IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| Plaintiff, § § | |
| v. § § | Civil No.: 3-16-CV-0172L |
| KENNETH W. CRUMBLEY, JR. and SEDONA OIL & GAS CORPORATION, § § § § | |
| Defendants. § | |

# RECEIVER'S SECOND QUARTERLY FEE APPLICATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Receiver Becky McGee ("Receiver") submits this Second Quarterly Fee Application, respectfully stating:

## Introduction

1. This Application is tendered pursuant to the procedures established in the Order Appointing Receiver (Dkt. 14 at pgs. 19-20, ¶¶ 41-44).

2. The Receiver, in taking this appointment, agreed to be subject to these procedures, as well as to certain Billing Instructions. Consistent with the appointment order and those instructions, the Receiver has previously tendered this Application for review by the Securities and Exchange Commission ("Commission"), and has addressed any concerns raised by the Commission prior to the filing of this Application.

3. The procedures also provide that all Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. The procedures further provide that the Court may direct that the Receiver hold back 20% of the amounts set forth in this Application pending a final application submitted at the end of the case.

**Period Covered by Application**

4.     This Application seeks the Court's approval of the invoices received by the Receiver from professionals retained by her for the time period of March 1, 2016 through May 31, 2016 (the "past Quarter").[1]

**Status of Receivership**

5.     The Order Appointing Receiver also provides that the Receiver is to file Quarterly Status Reports (Dkt. 14 at 17-18), which the Receiver has recently done with regard to the same period covered by this Application (Dkt. 35).  The Quarterly Status Report is designed to provide the Court with detailed information as to the status of the receivership, and the timing of its submission allows the Court to have a full report available to it in considering this Application. The Receiver would accordingly incorporate such report by reference, and encourage the Court to review that report in connection with the Court's consideration of this Application.

6.     The Receiver would specifically underscore a few points by way of overview in addition to the Quarterly Status Report:

(a)     After the Receiver successfully obtained approximately $810,000.00 from twenty-two (22) bank accounts and three (3) cashiers' checks related to funds seized from Defendants Sedona and Crumbley, the Receiver deposited all of these funds into a single bank account.

(b)     The Receiver has reached an agreement in principle with Ms. Carol Kapuranis relating to approximately $600,000.00 in cashiers' checks she withdrew from accounts, primarily in her name alone, but one also with Defendant Crumbley.  Ms. Kapuranis

---

[1] The billing cycle of the Receiver's professionals are only being submitted through May 31, 2016, rather than through the calendar quarter of June 2016.  The same will be true for the Standardized Fund Accounting Report ("SFAR") ,attached hereto as Exhibit A, due to the fact that well and lease operating expenses lag, at a minimum, thirty (30) days behind revenue recognition and thus May 31, 2016 is the latest date in which the Receiver can report a complete financial statement containing all relevant information.  Consequently, the Receiver and her professionals are only submitting fee applications through the same date, May 31, 2016.

has maintained that these funds are her sole and separate property and not subject to the Order Freezing Assets or the Order Appointing Receiver. The major terms of the settlement include Ms. Kapuranis delivering $275,000.00 to the Receiver, along with a Deed to property located in Lamesa, Texas (with an approximate value of $80,000.00).

(c) Sedona holds interest in wells which it operates and wells which are operated by third-parties. In certain cases these wells are not operating profitably or not operating at all. The Receiver is compiling an assessment of all of these wells and formulating her proposed disposition plan to be filed with the Court.

### DAWSON COUNTY, TEXAS

**Holder Lease** – There are three (3) producing wells:

- Holder #1
- Holder #2
- Holder #3

The total production from these three wells averages 40 barrels of oil per day.

There is a fourth well, the Holder #4, but that well cannot be produced because the location does not meet Texas Railroad Commission ("RRC") requirements (it was drilled too close to the #2 and #3). Sedona is the operator of record for these wells.

The Receiver is evaluating opportunities for the disposition of these assets and anticipates making recommendations to the Court by September 1, 2016.

**Double Diamond Lease** – The following three wells produce a total of 8 barrels of oil per day and 47 mcf of natural gas per month.

- Double Diamond #1A
- Double Diamond #2
- Double Diamond #3

The Receiver is evaluating opportunities for the disposition of these assets and anticipates making recommendations to the Court by September 1, 2016.

Nearby, there are also two wells that have been temporarily abandoned:

- Triple Seven
- Ruby Red

The Triple Seven well appears to be a candidate for conversion to a salt water disposal well to accept salt water produced from the Holder wells on the lease. The Receiver is continuing to explore this opportunity for future utility of the Triple Seven as well as opportunities for the Ruby Red well.

Sedona is the operator of record for all of these wells.

### Compass Energy Wells

Compass Energy is the operator of record for the following Dawson County wells in which Sedona owns an interest.

- Snell Adams (15%)   Total production averages 80 B/D
- Perry 47-1 (17%)    Total production averages 10-15 B/D
- Snell 3605 (20%)    Total production averages 8-14 B/D
- Snell 3606 (20%)    Total production averages 8-14 B/D

Although Compass Energy has provided some preliminary summary information, it has not yet been able to provide the Receiver with information it can confirm is correct.

In addition, on January 4, 2016 Sedona conveyed its interest in another Compass-operated well, Perry 47-2 (20.3%), to CTX Energy LLC (and Carol Kapuranis). CTX Energy LLC's sole member is Crumbley. This well's total production averages 60-70 B/D. The Receiver has provided Compass Energy the required documentation to allow the revenue attributable to this CTX interest to be released to the Receiver. Compass has advised that its joint interest expense records for the CTX interest in this well are being audited for possible corrections. The net revenue will be released to CTX upon completion of this audit.

The Receiver is evaluating options for future disposition of these Compass Energy-operated interests and expects to make recommendations to the Court in the near future.

RECEIVER'S SECOND QUARTERLY FEE APPLICATION – Page 4

**Residential Real Estate**

There is a house located at 205 Highland, Lamesa, Texas. A local broker's opinion of value was obtained. The broker suggests a value of approximately $80,000. The Receiver has received unsolicited expressions of interest in this property and plans to pursue these opportunities as part of her evaluation of options for future disposition of this asset.

**CONCHO COUNTY, TEXAS**

**Roy Rauch Lease**

The Roy Rauch #3 well appears to have been the well for which Sedona was most recently raising and accumulating funds for the purpose of completing the well. The #3 well is one of two wells on the Roy Rauch lease:

- Roy Rauch #2 well – averages 55 mcf/day
- Roy Rauch #3 well – drilled but not completed.

The Receiver negotiated an extension of the primary term of the Rauch oil and gas lease to secure more time within which the Roy Rauch #3 well completion operation can be conducted. Concho Oilfield Services and Operating Co. is the operator of record for these wells. The Receiver is evaluating disposition options for these wells and intends to advise the Court in the near future.

**HARDIN COUNTY, TEXAS**

**Hooks Lease**

- Hooks # 2AA    71.72% WI and 1% ORRI

- Hooks #3       71.72% WI and 1% ORRI - currently not producing (operational issue)

- W.W. Cruse injection well – Sedona has a contract to dispose salt water from the Hooks wells into this well for a flat monthly fee.

- Two additional shut-in wells.

Sedona is the operator of record for all of the Hardin County wells listed above. Compounding the existing issues with documentation and accounting, the current oil production from these wells is nominal. Based on the Receiver's preliminary assessment of likely disposition options, the Receiver expects to make a recommendation to the Court in the short term.

**McBride Fee Lease** – H.E.R. Operating, LLC is the operator of record for the following well in which Sedona owns an interest.

- McBride Fee well (10%) – Sedona's share of revenues is being applied to its share of past and ongoing expenses.

The Receiver plans to make a recommendation to the Court regarding the disposition of this interest in the short term.

### LAVACA COUNTY, TEXAS

Sedona is the operator of record on one inactive well on the Kurtz lease. The well is listed as temporarily abandoned. It is unlikely that there is much value in this well. The Receiver is continuing to explore next steps for this well, including plugging and abandonment, and will advise the Court.

### HIDALGO COUNTY, TEXAS

Fordyce is the operator of record of a well in which Sedona has an interest. However, the production is nominal and revenues are being applied to Sedona's unpaid portion of the expenses:

- Devon #2 well    total production averages 13 Mcf/d

Sedona has a 35% WI (26.25% NRI).

The Receiver is exploring options for this interest.

### CONCORDIA PARISH, LOUISIANA

- Quinn 5 #1 well    Shut in due to operational issues.

Sedona is operator of record.

The Receiver is evaluating disposition options for this well including transfer of operatorship. This well is the only well owned or operated by Sedona in Louisiana.

### CUMBERLAND COUNTY, KENTUCKY

**Collins (Hurd) Lease** – averages 2 1/2 B/D total from the following wells in which Sedona has a 92.5% WI (77.55% NRI):

- Collins # 3
- Collins # 6
- Collins # 8
- Collins #14
- Collins #15 (not producing due to operational issues).

Storm Resources LLC is the operator of record.  Under prevailing local crude oil prices in the area and with operating costs comparable to other wells in this area, each of these wells needs to produce more than 1 B/D to be sustainable.  The Receiver is continuing to pursue operator reports from Storm in order to make decisions as to next steps and to complete the evaluation of these wells.

### OVERTON AND PICKETT COUNTIES, TENNESSEE

Sedona owns an interest in the following third-party operated wells:

**Sells Wells**

- Sells #2   Shut in due to electric motor failure, uneconomic to repair and operate at current crude oil prices. Prior to shut in, produced 1-1 ½ B/D.
- Sells #3   Candidate for plugging.
- Sells #4   Shut in due to electric motor failure, uneconomic to repair and operate at current crude oil prices. Prior to shut in, produced ¼ - ½ B/D.

J3 Natural Resources is the operator of record for the Sells wells.  Given basic lease operating costs, including the $500/month/well operating fee, and the current crude oil price in the area, a well must produce more than 1 B/D to have value.  Accordingly, currently these wells appear to have nominal value.

RECEIVER'S SECOND QUARTERLY FEE APPLICATION – Page 7

The Receiver is exploring disposition options for these interests.

### Jimmy Young Wells

- Jimmy Young #7 (24%)

- Jimmy Young #3 (24%)

TN Oil Co. is the operator of record. These wells are producing and, based upon the available records, appear to have positive value.

### MISCELLANEOUS J3 WELLS

CTX Energy LLC is the owner of interests in the following producing wells operated by J3 Natural Resources until February 2016 and by Crude LLC currently. According to the crude oil purchaser's records, CTX received a total of $32,490.94 from 6/01/13 – 12/20/15.

Overton County, Tennessee

- William Decker #1CTX       9.659% WI (7.4375% NRI) and 8.5% ORRI
- Jonathan McDonald #JM1    9.3846% WI (7.32% NRI)
- Clema Hunter #1            8.3423% WI (6.9275% NRI) and 2.46% ORRI
- Douglas Wright #1CTX       11.581% WI (8.5313% NRI) and 4.585% ORRI

Clinton County, Kentucky

- Emily Wall #2              12.0056% WI (8.925% NRI) and 8.66% ORRI
- Warren Wallace #1 IGR      16.4059% WI (13.945% NRI)
- Warren Wallace #1 CTX      16.4059% WI (13.945% NRI)

Cumberland County, Kentucky

- Michael Boyles #1,1,3 & CS2   5.591% WI (4.431% NRI)

7.   Despite Sedona's lack of industry standard recordkeeping, the Receiver has identified, and taken steps to notify, all of the investors and/or creditors whose information was contained in Sedona's files or who have contacted the Receiver post-receivership.[2]

---

[2] In June 2016, the Receiver also sent approximately 700 claim forms to this constituency, which are to be returned no later than August 31, 2016. Upon analyzing the returned claim forms, the Receiver anticipates filing a plan of distribution on or before October 15, 2016.

RECEIVER'S SECOND QUARTERLY FEE APPLICATION – Page 8

8.     The Receiver has identified a significant number of creditors with months of pre-receivership invoices Sedona had not paid. She has worked, and continues to work, with secured creditors to reach interim arrangements in order to continue their provision of services and for their refraining from filing their secured well liens.

9.     In order to reduce operating expenses, the Receiver has relocated the Sedona office, including all of the hard copy and electronic files and materials to be preserved, and reduced the rent by approximately $4,000.00 a month.  In conjunction therewith, the Receiver abandoned to the landlord certain furniture and fixtures (for which she was unable to locate any purchaser who was willing to make a bid) in lieu of the past due rent of approximately $30,000.00, all as provided for in the Order Appointing Receiver.

10.    The Receiver engaged LSS&M from the outset of the case.  Based upon the allegations in the SEC complaint that the defendants were engaged in spoliation of business records, a team of experienced forensic accountants was dispatched to assist in the marshalling of estate property.  LSS&M immediately began a systematic examination of the defendant's affairs with specific emphasis on asset identification, assessment of accounting systems and controls, with attention to record retention and preservation.  LSS&M assisted the Receiver in her tracing of funds in order to identify potential Receivership Assets, including without limitation, funds transferred from Receivership Defendants and their affiliates or related entities to Ms. Carol Kapuranis.

11.    There are a few additional miscellaneous points that are required to be included in this Application under the Billing Procedures and/or the Order Appointing Receiver:

   (a)     This is the second application presented by the Receiver, and so there are no additional administrative costs in this matter.  There have been no objections to the First Quarterly Fee Application, which was filed May 11, 2016.

(b) With regard to communications with investors, the Receiver sent notification of the Receivership to over 1,000 names located in Sedona's software tracking system, Roughneck.

(c) The Receiver has established a website, providing investors with copies of relevant pleadings, periodic updates, and an address, telephone number and e-mail address to communicate with the Receiver.

(d) With regard to a claims process, the Receiver filed a Motion for Approval, which the Court granted.[3]

## AMOUNT REQUESTED

12. The efforts described herein have caused the Receiver to incur significant administrative expenses. For reasons set forth above and more fully below, the Receiver believes that a number of the efforts reflected in these expenses will bear fruit in the future, and further, as noted, the Receiver believes that several of the wells will incur fewer unplanned major expenses and will produce increased revenue in the near future. However, at the present time, these expenses are large compared to Sedona's current cash assets. The Receiver therefore proposes a holdback of 20% of Munsch Hardt's, LSS&M's and the Receiver's invoices contemplated by the Order Appointing Receiver, such that the amount sought at this time is $89,774.40 in fees and $1,525.87 in expenses for a total of $91,300.27 and the proposed holdback is $22,443.60.

13. The Receiver further requests approval of the entire amount as reasonable and necessary and subject accordingly to payment as the assets of Sedona and the anticipated recoveries may allow and the Court may direct. The entire amount is $113,743.87, as shown on the following chart and more specifically in Exhibit "B" hereto:

---

[3] In June 2016, the Court approved the Receiver's Claim Form and Claims Process, and the Receiver has now sent out Claim Forms to over 700 investors and creditors. The deadline to return the Claim Forms is August 31, 2016. When these claims have been organized and analyzed, the Receiver will propose a plan of distribution to the Court.

RECEIVER'S SECOND QUARTERLY FEE APPLICATION – Page 10

| Firm | Invoice Thru | Fees | Expenses | Totals |
|---|---|---|---|---|
| Munsch Hardt | 5/31/2016 | $48,352.50 | $1,326.62 | $49,679.12 |
| Becky McGee | 5/31/2016 | $45,990.00 | 0 | $45,990.00 |
| Litzler Segner | 5/31/2016 | $17,875.50 | $195.25 | $18,074.75 |
| | | | Total | $113,743.87 |

## Summary of Work Performed

14. The invoices attached in Exhibit "B" have time detail entries that are consistent with the Billing Instructions, and which accordingly provide the rates charged, the time spent, a description by entry of the work performed, and also classifies the work according to certain task codes.

15. The primary focus of the Receiver during the period covered by this report has been to consolidate the cash from the asset freeze, continue assessment of potentially wasting assets, implement ongoing measures to preserve, and in certain instances, enhance the assets, implement a plan to explore future options to address those assets, propose a claims process and claim forms to investors and creditors, and take necessary steps to reduce the Receivership overhead and to prepare recommendations for the Court on the points laid out in the Order Appointing Receiver.

16. In addition to ongoing management and preservation of the assets, other effective actions taken during the period covered by this report include the following:

- Implemented necessary expenditures to responsibly address damage resulting from past practices and to implement necessary preventative chemical treatment programs and properly functioning equipment to preserve and stabilize the assets and, in most cases, decrease preventable expenses and improve production levels.[4]

---

[4] In general pre-receivership practices in operating the Sedona-operated wells were guided by limiting expenditures to the point that necessary maintenance was deferred and low-cost stop gap measures were employed routinely instead of prudent practices.  During the period of this report, the inevitable adverse consequences of this pre-receivership approach have been ever present. For example, corrosive salt water and paraffin are naturally occurring byproducts of the Spraberry formation crude oil production from Sedona's Holder and Double Diamond wells. Prudent maintenance programs for wells producing from this formation require routine preventative chemical treatment programs. Otherwise, as with these Sedona wells, these byproducts damage or destroy equipment leading to expensive equipment repairs and/or replacement as well as collateral safety, environmental and surface damage

RECEIVER'S SECOND QUARTERLY FEE APPLICATION – Page 11

- Engaged (on a targeted, as-needed basis) the services of an oil and gas operations consultant with demonstrated expertise in the area where the specific wells are located.

- Pursued alternatives to expensive trucking of the salt water produced from the Holder wells by proposing making volumes available to two nearby waterflood operations (unfortunately neither operation is in need of additional salt water volumes).

- Identified Sedona's temporarily abandoned Triple Seven well on the lease as a candidate for conversion to a salt water disposal well for the Holder wells in lieu of trucking.

- Identified value in equipment associated with the Holder #4 (which cannot be produced due to improper location not in compliance w/RRC spacing rules) e.g. equipment in the well and on the surface could be used in conversion of Triple Seven to SWD well.

- Addressed pre-receivership cleanup issues and previously ignored Rauch surface owner requirements for fencing and surface maintenance.

- Negotiated a lease extension with the lessor/surface owner so that all the relevant leases for the Rauch #3 well have a primary term extension until the end of 2016.

- Filed annual as well as monthly state regulatory reports required by various state agencies in Texas and Louisiana bringing all current.

- Recovered over $5,000 from agencies in Oklahoma and Texas where refunds were available to Sedona.

- Identified and recovered for Sedona several thousand dollars held by a purchaser in suspense status.

These actions preserve the value of the receivership assets and at the same time make these assets more valuable to a subsequent owner.

17.     The Receiver has consolidated the $180,054.54 frozen in twenty-six (26) accounts located in two different banks along with $630,027.28 Receiver's counsel received from counsel for the Defendants representing cashiers' checks obtained by the Defendants on or about January 21, 2016.  The Receiver combined these amounts totaling approximately $810,000.00 which she deposited in a new account opened for the Receivership at Union Bank.

---

issues to be addressed. Moreover, production of the crude oil is severely limited or shut down as are the associated sales revenues.

18.     The Receiver also undertook negotiations with Ms. Carol Kapuranis and her counsel Vic Cunningham regarding approximately $600,000.00 in cashiers' checks she withdrew from various accounts in her name and one account in both Defendant Crumbley and her name. The Receiver believes an agreement in principle has been reached with Ms. Kapuranis, the details of which are set forth above.

19.     The Receiver has continued its assessment of Sedona's ownership, regulatory/compliance and operational records in an attempt to continue her analysis of the status and viability of the various oil and gas wells being operated by, or on behalf of, Sedona. The Receiver has spoken directly with a number of field contractors, oil and gas purchasers, and regulatory agency officials as have the state-specific oil and gas consultants assisting the Receiver in analyzing the status of various oil and gas wells, in addition to filing required regulatory filings and to exploring methods to preserve, and where applicable, enhance, prudently operate, monetize and dispose of these assets. In the asset section, the Receiver addresses these issues in more detail.

20.     The Receiver has contacted and spoken with numerous of the Defendants' creditors, several of which Sedona had not paid since mid 2015. The Receiver has worked, and is working, to reach interim arrangements with these trade contractors to ensure they continue performing their necessary functions in the operation of the wells.

21.     The Receiver sent notification to approximately one thousand (1,000) investors and/or creditors, whose names and contact information were extracted from the Defendants' oil and gas software, known as Roughneck. Approximately four hundred of these letters were returned with no forwarding address.[5]

---

[5] Subsequently, the Court granted the Receiver's request to mail out, and upload on the Receiver's website, a Claim Form for investors and creditors, with a return deadline of August 31, 2016. Once these Claim Forms have been returned, organized, and analyzed the Receiver intends to propose a distribution plan to the Court based upon her findings.

RECEIVER'S SECOND QUARTERLY FEE APPLICATION – Page 13

22. In an effort to reduce the operating expenses, the Receiver has abandoned Sedona's previous lease space (which costs over $5,000.00 a month) and relocated to a smaller space and reduced the rent to approximately $1,100.00 a month. The landlord had not been paid rent in approximately five (5) months, resulting in past due rental of approximately $30,000.00. In conjunction with the move, the Receiver sought appraisals and/or opinions of value on numerous surplus pieces of furniture, equipment and fixtures located in the prior lease space. The Receiver was unable to obtain any bids to purchase these items, with perspective purchasers expressing the opinion that the items were not in demand given the glut of substantially similar items in the Dallas area and, as a result, the cost to move the items would be equal to or greater than the value to be received. Consequently, the Receiver abandoned these items to the landlord, who had a landlord's lien on them due to the defaulted lease, pursuant to her authority in the Order Appointing Receiver.

23. The Receiver and her counsel investigated, analyzed, and worked to resolve employee healthcare and Texas Workforce Commission issues.

## Application of Johnson Factors

24. The primary concern in an attorney's fee case is that the fee awarded be reasonable. *Blum v. Stenson,* 465 U.S. 886, 893 (1984). In this Circuit, the applicable test is set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Under that test, a court must first determine the loadstar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted by various factors.

25. The following reviews this Application with regard to each of the *Johnson* factors:

(a) <u>The time and labor required</u>. The time and labor required are set forth in detail in the statements contained in Exhibit "B." The Receiver invites the Court to review those statements in detail. Further, the invoices are summarized above.

RECEIVER'S SECOND QUARTERLY FEE APPLICATION – Page 14

(b)     <u>The novelty and difficulty of the questions</u>.  The questions addressed by the professionals herein are common to enforcement receiverships generally, although the employee healthcare and Texas Workforce Commission issues were unique.  The level of difficulty of the issues was such that many of them required the attention of a more senior professional.

(c)     <u>The requisite skill to perform the service</u>.  The Receiver believes that the services performed in this case have required individuals possessing considerable experience in business transactions, investment fraud, oil and gas business and funds tracing.  The Receiver, her counsel, and her accountant and trustee support firm have considerable experience in these areas.

(d)     <u>The preclusion of other employment due to the acceptance of the case</u>.  The Receiver and her professionals have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e)     <u>The customary fee</u>.  The hourly rates sought herein are at least commensurate with the rates charged by other practitioners of similar experience levels in the Northern District of Texas and in the case of the Receiver and her professionals.  With regard to her counsel, the rates represent a thirty-seven percent reduction from their standard rates, which was agreed to at the request of the Commission, and approved without objection by this Court at the genesis of this case.

(f)     <u>Whether the fee is fixed or contingent</u>.  The Receiver and her professionals' fees are fixed insofar as monies exist by way of receivership assets from which to pay such fees. Payment of such fees, however, is subject to Court approval, and is contingent upon the availability of receivership assets, as evidenced by the holdback suggested by the Receiver.

(g)     <u>Time limitations imposed by the Client or other circumstances</u>. The time

RECEIVER'S SECOND QUARTERLY FEE APPLICATION – Page 15

requirements during the period covered by this Application have been substantial, although in most respects they have decreased from the emergent nature of the first few weeks of the receivership.

      (h)    <u>The amount involved and the results obtained</u>.?  The amount involved in this case can be measured in a number of ways.  Obviously, there were six investment offerings worth approximately $3.3 million having been raised, which has impacted approximately 55 investors, numerous creditors, and other parties.

      (i)    <u>The experience, reputation and ability of the attorneys</u>.  Munsch Hardt is a broad-based commercial firm with substantial experience in the handling of matters generally related to civil trial law, dispute resolution, bankruptcy and general workout matters. The practice of the attorneys specifically in this case regularly includes the representation of investors and other persons involved in business transactions in which the investors or other parties are victims or aggrieved in some fashion.  Receiver and her counsel have also participated in other large enforcement receiverships. The reputations of the Receiver and her counsel are recognized and respected in their community and area of practice.

      (j)    <u>The undesirability of the case</u>.  The service as Receiver and the representation of the Receiver incident to this case has not been undesirable.

      (k)    <u>The nature and length of the professional relationship with the client</u>. This is not a factor with regard to this engagement.

      (l)    <u>Award in similar cases</u>.  The Receiver submits that the fees requested in this case are commensurate with awards approved in comparable cases in this district.

## Certification

As required by the Order Appointing Receiver, the undersigned hereby certifies that the fees and expenses incurred herein and reflected on this Application were incurred in the best interests of the Receivership Estate; and (with the exception of the Billing Instructions agreed to

with the Commission) the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation to be paid or to be paid from the Receivership Estate, or any sharing thereof. Additionally, as required by the Billing Instructions, the undersigned hereby additionally certifies that she has read this Application, that to the best of her knowledge, information and belief formed after a reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions, that all fees contained in the Application are based on the rates listed in the Applicant's original fee schedule and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed, that she has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent such may exist in the permitted allowable amounts set forth in the Billing Instructions with regard to photocopies), and in seeking reimbursement for a service which was justifiably purchased or contracted for a professional from a third party, she requests reimbursement only for the amount billed by and paid to the vendor and she is not making a profit on any reimbursable services provided by her.

## Conclusion

WHEREFORE, PREMISES CONSIDERED, the Receiver requests that this Court approve all of the fees and expenses as set forth herein and for such other and further relief, general and special, at law or in equity, to which the Receiver may be justly entitled.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 North Akard Street
Dallas, TX 75201-6659
(214) 740-5108
(214) 855-7584 (facsimile)
droossien@munsch.com

By: */s/ Dennis Roossien* _____
Dennis L. Roossien, Jr.
Bar No. 00784873

ATTORNEYS FOR BECKY MCGEE,
COURT APPOINTED RECEIVER

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August, 2016, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Dennis Roossien*
Dennis Roossien

MHDocs 7042016_1 4856.18