IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| Plaintiff, § § | |
| v. § § | Civil No.: 3-16-CV-0172L |
| KENNETH W. CRUMBLEY, JR. and SEDONA OIL & GAS CORPORATION, § § § § | |
| Defendants. § | |

## RECEIVER'S THIRD QUARTERLY FEE APPLICATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Receiver Becky McGee ("Receiver") submits this Third Quarterly Fee Application, respectfully stating:

### Introduction

1.  This Application is tendered pursuant to the procedures established in the Order Appointing Receiver (Dkt. 14 at pgs. 19-20, ¶¶ 41-44).

2.  The Receiver, in taking this appointment, agreed to be subject to these procedures, as well as to certain Billing Instructions. Consistent with the appointment order and those instructions, the Receiver has previously tendered this Application for review by the Securities and Exchange Commission ("Commission"), and has addressed any concerns raised by the Commission prior to the filing of this Application.

3.  The procedures also provide that all Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. The procedures further provide that the Court may direct that the Receiver hold back 20% of the amounts set forth in this Application pending a final application submitted at the end of the case.

**Period Covered by Application**

4. This Application seeks the Court's approval of the invoices received by the Receiver from professionals retained by her for the time period of June 1, 2016 through August 31, 2016 (the "past Quarter").[1]

**Status of Receivership**

5. The Order Appointing Receiver also provides that the Receiver is to file Quarterly Status Reports (Dkt. 14 at 17-18), which the Receiver has recently done with regard to the same period covered by this Application (Dkt. 46). The Quarterly Status Report is designed to provide the Court with detailed information as to the status of the receivership, and the timing of its submission allows the Court to have a full report available to it in considering this Application. The Receiver would accordingly incorporate such report by reference, and encourage the Court to review that report in connection with the Court's consideration of this Application.

6. The Receiver would specifically underscore a few points by way of overview in addition to the Quarterly Status Report:

(a) The Receiver sent out approximately seven hundred (700) claim forms to investors requesting that the forms be returned, along with any supporting documents, no later than August 31, 2016. Several investors requested an extension, for various reasons, which were granted.

(b) The Receiver executed the new office lease, thus cutting administrative expenses by approximately $4,000.00 per month.

---

[1] The billing cycle of the Receiver's professionals are only being submitted through August 31, 2016, rather than through the calendar quarter of September 2016. The same will be true for the Standardized Fund Accounting Report ("SFAR") ,attached hereto as Exhibit A, due to the fact that well and lease operating expenses lag, at a minimum, thirty (30) days behind revenue recognition and thus August 31, 2016 is the latest date in which the Receiver can report a complete financial statement containing all relevant information. Consequently, the Receiver and her professionals are only submitting fee applications through the same date, August 31, 2016.

RECEIVER'S THIRD QUARTERLY FEE APPLICATION – Page 2

(c)     The Receiver filed her Motion Seeking Authority to Sell or Otherwise Dispose of All of the Receivership Assets.[2]

(d)     The Receiver filed her Second Quarterly Report on August 1, 2016.

(e)     The Receiver has consummated a settlement agreement with Ms. Carol Kapuranis relating to cashiers' checks she withdrew from accounts, primarily in her name alone, but one also with Defendant Crumbley. Ms. Kapuranis delivered $275,000.00 to the Receiver, along with a Deed to property located in Lamesa, Texas (with an approximate value of $80,000.00).

(f)     Sedona holds interest in wells which it operates and wells which are operated by third-parties. In certain cases these wells are not operating profitably or not operating at all. The Receiver continues to operate the wells where it is prudent and resolves issues with the remaining wells. As stated above, the Court has approved the Receiver's request for authority to sell or dispose of these assets.

## DAWSON COUNTY, TEXAS

**Holder Lease** – There are three (3) producing wells:

- Holder #1
- Holder #2
- Holder #3

The total production from these three wells averages 40 barrels of oil per day.

There is a fourth well, the Holder #4, but that well cannot be produced because the location does not meet Texas Railroad Commission ("RRC") requirements (it was drilled too close to the #2 and #3). Sedona is the operator of record for these wells.

The Receiver is evaluating opportunities for the disposition of these assets.

**Double Diamond Lease** – The following three wells produce a total of 8 barrels of oil per day and 47 mcf of natural gas per month.

---

[2] The Motion was subsequently granted on September 29, 2016.

RECEIVER'S THIRD QUARTERLY FEE APPLICATION – Page 3

- Double Diamond #1A
- Double Diamond #2
- Double Diamond #3

The Receiver is evaluating opportunities for the disposition of these assets.

Nearby, there are also two wells that have been temporarily abandoned:

- Triple Seven
- Ruby Red

The Triple Seven well appears to be a candidate for conversion to a salt water disposal well to accept salt water produced from the Holder wells on the lease. The Receiver is continuing to explore this opportunity for future utility of the Triple Seven as well as opportunities for the Ruby Red well.

Sedona is the operator of record for all of these wells.

### Compass Energy Wells

Compass Energy is the operator of record for the following Dawson County wells in which Sedona owns an interest.

- Snell Adams (15%)  Total production averages 80 B/D
- Perry 47-1 (17%)  Total production averages 10-15 B/D
- Snell 3605 (20%)  Total production averages 8-14 B/D
- Snell 3606 (20%)  Total production averages 8-14 B/D

Although Compass Energy has provided some preliminary summary information, it has not yet been able to provide the Receiver with information it can confirm is correct.

In addition, on January 4, 2016 Sedona conveyed its interest in another Compass-operated well, Perry 47-2 (20.3%), to CTX Energy LLC (and Carol Kapuranis).  CTX Energy LLC's sole member is Crumbley. This well's total production averages 60-70 B/D.  The Receiver has provided Compass Energy the required documentation to allow the revenue attributable to this CTX interest to be released to the Receiver.  Compass has advised that its joint interest expense records for the CTX interest in this well are being audited for possible corrections. The net revenue will be released to CTX upon completion of this audit.

RECEIVER'S THIRD QUARTERLY FEE APPLICATION – Page 4

The Receiver is evaluating options for future disposition of these Compass Energy-operated interests.

### Residential Real Estate

There is a house located at 205 Highland, Lamesa, Texas. A local broker's opinion of value was obtained. The broker suggests a value of approximately $80,000. The Receiver has received unsolicited expressions of interest in this property and plans to pursue these opportunities as part of her evaluation of options for future disposition of this asset.

## CONCHO COUNTY, TEXAS

### Roy Rauch Lease

The Roy Rauch #3 well appears to have been the well for which Sedona was most recently raising and accumulating funds for the purpose of completing the well. The #3 well is one of two wells on the Roy Rauch lease:

- Roy Rauch #2 well – averages 55 mcf/day
- Roy Rauch #3 well – drilled but not completed.

The Receiver negotiated an extension of the primary term of the Rauch oil and gas lease to secure more time within which the Roy Rauch #3 well completion operation can be conducted. Concho Oilfield Services and Operating Co. is the operator of record for these wells. The Receiver is evaluating disposition options for these wells.

## HARDIN COUNTY, TEXAS

### Hooks Lease

- Hooks # 2AA - 71.72% WI and 1% ORRI – currently not producing operational issue)

- Hooks #3 - 71.72% WI and 1% ORRI - currently not producing (operational issue)

- W.W. Cruse injection well – Sedona has a contract to dispose salt water from the Hooks wells into this well for a flat monthly fee.

- Two additional shut-in wells.

Sedona is the operator of record for all of the Hardin County wells listed above.

**McBride Fee Lease** – H.E.R. Operating, LLC is the operator of record for the following well in which Sedona owns an interest.

- McBride Fee well (10%) – Sedona's share of revenues is being applied to its share of past and ongoing expenses.

The Receiver is evaluating disposition options for this well.

## LAVACA COUNTY, TEXAS

Sedona is the operator of record on one inactive well on the Kurtz lease. The well is listed as temporarily abandoned. It is unlikely that there is much value in this well. The Receiver is continuing to explore next steps for this well, including plugging and abandonment, and will advise the Court.

## HIDALGO COUNTY, TEXAS

Fordyce is the operator of record of a well in which Sedona has an interest. However, the production is nominal and revenues are being applied to Sedona's unpaid portion of the expenses:

- Devon #2 well    total production averages 13 Mcf/d

Sedona has a 35% WI (26.25% NRI).

The Receiver is exploring options for this well.

## CONCORDIA PARISH, LOUISIANA

- Quinn 5 #1 well    Shut in due to operational issues.

Sedona is operator of record.

The Receiver is evaluating disposition options for this well including transfer of operatorship. This well is the only well owned or operated by Sedona in Louisiana.

CUMBERLAND COUNTY, KENTUCKY

**Collins (Hurd) Lease** – averages 2 1/2 B/D total from the following wells in which Sedona has a 92.5% WI (77.55% NRI):

- Collins # 3
- Collins # 6
- Collins # 8
- Collins #14
- Collins #15 (not producing due to operational issues).

Storm Resources LLC is the operator of record. Under prevailing local crude oil prices in the area and with operating costs comparable to other wells in this area, each of these wells needs to produce more than 1 B/D to be sustainable. The Receiver is continuing to pursue operator reports from Storm in order to make decisions as to next steps and to complete the evaluation of these wells.

OVERTON AND PICKETT COUNTIES, TENNESSEE

Sedona owns an interest in the following third-party operated wells:

**Sells Wells**

- Sells #2 - Shut in due to electric motor failure, uneconomic to repair and operate at current crude oil prices. Prior to shut in, produced 1-1 ½ B/D.

- Sells #3 - Candidate for plugging.

- Sells #4 - Shut in due to electric motor failure, uneconomic to repair and operate at current crude oil prices. Prior to shut in, produced ¼ - ½ B/D.

J3 Natural Resources is the operator of record for the Sells wells. Given basic lease operating costs, including the $500/month/well operating fee, and the current crude oil price in the area, a well must produce more than 1 B/D to have value. Accordingly, currently these wells appear to have nominal value.

The Receiver is exploring disposition options for these interests.

### Jimmy Young Wells

- Jimmy Young #7 (24%)
- Jimmy Young #3 (24%)

TN Oil Co. is the operator of record. These wells are producing and, based upon the available records, appear to have positive value.

### MISCELLANEOUS J3 WELLS

CTX Energy LLC is the owner of interests in the following producing wells operated by J3 Natural Resources until February 2016 and by Crude LLC currently. According to the crude oil purchaser's records, CTX received a total of $32,490.94 from 6/01/13 – 12/20/15.

Overton County, Tennessee

- William Decker #1CTX      9.659% WI (7.4375% NRI) and 8.5% ORRI
- Jonathan McDonald #JM1    9.3846%WI (7.32% NRI)
- Clema Hunter #1           8.3423%WI (6.9275% NRI) and 2.46% ORRI
- Douglas Wright #1CTX      11.581% WI (8.5313% NRI) and 4.585% ORRI

Clinton County, Kentucky

- Emily Wall #2             12.0056% WI (8.925% NRI) and 8.66% ORRI
- Warren Wallace #1 IGR 16.4059% WI (13.945% NRI)
- Warren Wallace #1 CTX     16.4059% WI (13.945% NRI)

Cumberland County, Kentucky

- Michael Boyles #1,1,3 & CS2   5.591% WI (4.431% NRI)

7.   Despite Sedona's lack of industry standard recordkeeping, the Receiver has identified, and taken steps to notify, all of the investors and/or creditors whose information was contained in Sedona's files or who have contacted the Receiver post-receivership.[3]

8.   The Receiver continues to work with secured creditors to reach interim arrangements in order to continue their provision of services and for their refraining from filing their secured well liens.

---

[3] In June 2016, the Receiver also sent approximately 700 claim forms to this constituency, which are to be returned no later than August 31, 2016. Upon analyzing the returned claim forms, the Receiver anticipates filing a plan of distribution on or before December 15, 2016.

RECEIVER'S THIRD QUARTERLY FEE APPLICATION – Page 8

9. There are a few additional miscellaneous points that are required to be included in this Application under the Billing Procedures and/or the Order Appointing Receiver:

(a) This is the third application presented by the Receiver, and so there are no additional administrative costs in this matter. There have been no objections to the First or Second Quarterly Fee Applications, which were filed May 11, 2016 and August 15, 2016 respectively.

(b) With regard to communications with investors, the Receiver sent notification of the claims process to over seven hundred (700) names located in Sedona's software tracking system, Roughneck.

(c) The Receiver has continued to update her website, providing investors with copies of relevant pleadings, periodic updates, and an address, telephone number and e-mail address to communicate with the Receiver. Additionally, claim forms were uploaded to the website for investor use.

## **AMOUNT REQUESTED**

10. For the reasons set forth above, the Receiver believes that a number of the efforts reflected in these expenses were undertaken in the best interest of the Receivership Estate and will bear fruit in the future. The Receiver proposes a holdback of 20% of Munsch Hardt's, LSS&M's and the Receiver's invoices contemplated by the Order Appointing Receiver, such that the amount sought at this time is $83,528.80 in fees and $1,714.18 in expenses for a total of $85,242.98 and the proposed holdback is $20,882.20.

11. The Receiver further requests approval of the entire amount as reasonable and necessary and subject accordingly to payment as the assets of Sedona and the anticipated recoveries may allow and the Court may direct. The entire amount is $106,125.18, as shown on the following chart and more specifically in Exhibit "B" hereto:

| Firm | Invoice Thru | Fees | Expenses | Totals |
|---|---|---|---|---|
| Munsch Hardt | 8/31/2016 | $36,795.00 | $1,544.71 | $38,339.71 |
| Becky McGee | 8/31/2016 | $45,690.00 | 0 | $45,690.00 |
| Litzler Segner | 8/31/2016 | $21,926.00 | $169.47 | $22,095.47 |
|  |  |  | Total | $106,125.18 |

## **Summary of Work Performed**

12.  The invoices attached in Exhibit "B" have time detail entries that are consistent with the Billing Instructions, and which accordingly provide the rates charged, the time spent, a description by entry of the work performed, and also classifies the work according to certain task codes.

13.  The primary focus of the Receiver during the period covered by this report has been to continue operation of the oil and gas wells, prepare recommendations to this Court for the sale and/or disposition of all of the Receivership Assets, mail out and analyze claim forms from investors, and reduce administrative expenses wherever possible.

14.  In addition to ongoing management and preservation of the assets, other effective actions taken during the period covered by this report include the following:

- Continue necessary preventative chemical treatment programs and properly functioning equipment to preserve and stabilize the assets and, in most cases, decrease preventable expenses and improve production levels.[4]

- The Receiver sent out approximately seven hundred (700) claim forms to investors requesting that the forms be returned, along with any supporting documents, no later than August 31, 2016. Several investors requested an extension, for various reasons, which

---

[4] In general pre-receivership practices in operating the Sedona-operated wells were guided by limiting expenditures to the point that necessary maintenance was deferred and low-cost stop gap measures were employed routinely instead of prudent practices. During the period of this report, the inevitable adverse consequences of this pre-receivership approach have been ever present. For example, corrosive salt water and paraffin are naturally occurring byproducts of the Spraberry formation crude oil production from Sedona's Holder and Double Diamond wells. Prudent maintenance programs for wells producing from this formation require routine preventative chemical treatment programs. Otherwise, as with these Sedona wells, these byproducts damage or destroy equipment leading to expensive equipment repairs and/or replacement as well as collateral safety, environmental and surface damage issues to be addressed. Moreover, production of the crude oil is severely limited or shut down as are the associated sales revenues.

RECEIVER'S THIRD QUARTERLY FEE APPLICATION – Page 10

were granted.

- The Receiver executed the new office lease, thus cutting administrative expenses by approximately $4,000.00 per month.

- The Receiver filed her Motion Seeking Authority to Sell or Otherwise Dispose of All of the Receivership Assets.[5]

- The Receiver filed her Second Quarterly Report on August 1, 2016.

- The Receiver consummated a settlement agreement with Ms. Carol Kapuranis relating to cashiers' checks she withdrew from accounts, primarily in her name alone, but one also with Defendant Crumbley. Ms. Kapuranis delivered $275,000.00 to the Receiver, along with a Deed to property located in Lamesa, Texas (a single-family dwelling and its contents).

These actions preserve the value of the Receivership Assets and at the same time make these assets more valuable to a subsequent owner.

15. The Receiver has consolidated all cash in an account opened for the Receivership at Union Bank. The balance as of August 31, 2016 was $1,061,547.54.

16. The Receiver has continued its assessment of Sedona's ownership, regulatory/compliance and operational records in an attempt to continue her analysis of the status and viability of the various oil and gas wells being operated by, or on behalf of, Sedona. The Receiver has spoken directly with a number of field contractors, oil and gas purchasers, and regulatory agency officials as have the state-specific oil and gas consultants assisting the Receiver in analyzing the status of various oil and gas wells, in addition to filing required regulatory filings and to exploring methods to preserve, and where applicable, enhance, prudently operate, monetize and dispose of these assets. In the asset section, the Receiver addresses these issues in more detail.

17. The Receiver has contacted and spoken with numerous of the Defendants' creditors, several of which Sedona had not paid since mid-2015. The Receiver has worked, and

---

[5]The Motion was subsequently granted on September 29, 2016.

RECEIVER'S THIRD QUARTERLY FEE APPLICATION – Page 11

is working, to reach interim arrangements with these trade contractors to ensure they continue performing their necessary functions in the operation of the wells.

18. The Receiver sent claim forms to approximately seven hundred (700) investors and/or creditors, whose names and contact information were extracted from the Defendants' oil and gas software, known as Roughneck. Approximately one hundred sixty-seven (167) of these forms were returned.

19. The Receiver and her counsel received and responded to numerous communications from investors.

### Application of Johnson Factors

20. The primary concern in an attorney's fee case is that the fee awarded be reasonable. *Blum v. Stenson,* 465 U.S. 886, 893 (1984). In this Circuit, the applicable test is set forth in *Johnson v. Georgia Hwy. Express, Inc*., 488 F.2d 714 (5th Cir. 1974). Under that test, a court must first determine the loadstar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted by various factors.

21. The following reviews this Application with regard to each of the *Johnson* factors:

    (a) <u>The time and labor required</u>. The time and labor required are set forth in detail in the statements contained in Exhibit "B." The Receiver invites the Court to review those statements in detail. Further, the invoices are summarized above.

    (b) <u>The novelty and difficulty of the questions</u>. The questions addressed by the professionals herein are common to enforcement receiverships generally, although the employee healthcare and Texas Workforce Commission issues were unique. The level of difficulty of the issues was such that many of them required the attention of a more senior professional.

(c) <u>The requisite skill to perform the service</u>. The Receiver believes that the services performed in this case have required individuals possessing considerable experience in business transactions, investment fraud, oil and gas business and funds tracing. The Receiver, her counsel, and her accountant and trustee support firm have considerable experience in these areas.

(d) <u>The preclusion of other employment due to the acceptance of the case</u>. The Receiver and her professionals have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e) <u>The customary fee</u>. The hourly rates sought herein are at least commensurate with the rates charged by other practitioners of similar experience levels in the Northern District of Texas and in the case of the Receiver and her professionals. With regard to her counsel, the rates represent a thirty-seven percent reduction from their standard rates, which was agreed to at the request of the Commission, and approved without objection by this Court at the genesis of this case.

(f) <u>Whether the fee is fixed or contingent</u>. The Receiver and her professionals' fees are fixed insofar as monies exist by way of receivership assets from which to pay such fees. Payment of such fees, however, is subject to Court approval, and is contingent upon the availability of receivership assets, as evidenced by the holdback suggested by the Receiver.

(g) <u>Time limitations imposed by the Client or other circumstances</u>. The time requirements during the period covered by this Application have been substantial, although in most respects they have decreased from the emergent nature of the first few weeks of the receivership.

(h) <u>The amount involved and the results obtained</u>. The amount involved in this case can be measured in a number of ways. Obviously, there were six investment offerings

RECEIVER'S THIRD QUARTERLY FEE APPLICATION – Page 13

worth approximately $3.3 million having been raised, which has impacted approximately 55 investors, numerous creditors, and other parties.

(i)     <u>The experience, reputation and ability of the attorneys</u>.  Munsch Hardt is a broad-based commercial firm with substantial experience in the handling of matters generally related to civil trial law, dispute resolution, bankruptcy and general workout matters. The practice of the attorneys specifically in this case regularly includes the representation of investors and other persons involved in business transactions in which the investors or other parties are victims or aggrieved in some fashion.  Receiver and her counsel have also participated in other large enforcement receiverships. The reputations of the Receiver and her counsel are recognized and respected in their community and area of practice.

(j)     <u>The undesirability of the case</u>.  The service as Receiver and the representation of the Receiver incident to this case has not been undesirable.

(k)     <u>The nature and length of the professional relationship with the client</u>. This is not a factor with regard to this engagement.

(l)     <u>Award in similar cases</u>.  The Receiver submits that the fees requested in this case are commensurate with awards approved in comparable cases in this district.

### Certification

As required by the Order Appointing Receiver, the undersigned hereby certifies that the fees and expenses incurred herein and reflected on this Application were incurred in the best interests of the Receivership Estate; and (with the exception of the Billing Instructions agreed to with the Commission) the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation to be paid or to be paid from the Receivership Estate, or any sharing thereof.  Additionally, as required by the Billing Instructions, the undersigned hereby additionally certifies that she has read this Application, that to the best of her knowledge, information and belief formed after a reasonable

RECEIVER'S THIRD QUARTERLY FEE APPLICATION – Page 14

inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions, that all fees contained in the Application are based on the rates listed in the Applicant's original fee schedule and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed, that she has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent such may exist in the permitted allowable amounts set forth in the Billing Instructions with regard to photocopies), and in seeking reimbursement for a service which was justifiably purchased or contracted for a professional from a third party, she requests reimbursement only for the amount billed by and paid to the vendor and she is not making a profit on any reimbursable services provided by her.

## Conclusion

WHEREFORE, PREMISES CONSIDERED, the Receiver requests that this Court approve all of the fees and expenses as set forth herein and for such other and further relief, general and special, at law or in equity, to which the Receiver may be justly entitled.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 North Akard Street
Dallas, TX 75201-6659
(214) 740-5108
(214) 855-7584 (facsimile)
droossien@munsch.com

By:  */s/ James M. McGee* _____
Dennis L. Roossien, Jr.
Bar No. 00784873
James M. McGee
Bar No. 13613220

ATTORNEYS FOR BECKY MCGEE,
COURT APPOINTED RECEIVER

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 14th day of November, 2016, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

      */s/ James M. McGee*
      James M. McGee

4828-2103-4299_2 004856.00018