IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil No.: 3-16-CV-0172L |
| KENNETH W. CRUMBLEY, JR. and SEDONA OIL & GAS CORPORATION, | § § § § | |
| Defendants. | § § | |

# RECEIVER'S SIXTH QUARTERLY FEE APPLICATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Receiver Becky McGee ("Receiver") submits this Sixth Quarterly Fee Application, respectfully stating:

## INTRODUCTION

1. This Application is tendered pursuant to the procedures established in the Order Appointing Receiver (Dkt. 14 at pgs. 19-20, ¶¶ 41-44).

2. The Receiver, in taking this appointment, agreed to be subject to these procedures, as well as to certain Billing Instructions. Consistent with the appointment order and those instructions, the Receiver has previously tendered this Application for review by the Securities and Exchange Commission ("Commission"), and has addressed any concerns raised by the Commission prior to the filing of this Application.

3. The procedures also provide that all Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. The procedures further provide that the Court may direct that the Receiver hold back 20% of the amounts set forth in this Application pending a final application submitted at the end of the case.

## PERIOD COVERED BY APPLICATION

4.      This Application seeks the Court's approval of the invoices received by the Receiver from professionals retained by her for the time period of March 1, 2017 through May 31, 2017 (the "past Quarter").[1]

## STATUS OF RECEIVERSHIP

5.      The Order Appointing Receiver also provides that the Receiver is to file Quarterly Status Reports (Dkt. 14 at 17-18), which the Receiver has recently done with regard to the same period covered by this Application (Dkt. __).  The Quarterly Status Report is designed to provide the Court with detailed information as to the status of the receivership, and the timing of its submission allows the Court to have a full report available to it in considering this Application.  The Receiver would accordingly incorporate such report by reference, and encourage the Court to review that report in connection with the Court's consideration of this Application.

6.      The Receiver would specifically underscore a few points by way of overview in addition to the Quarterly Status Report:

(a)      The Receiver has continued to accept, compile and analyze claim forms from investors and creditors.

(b)      After the Receiver's Motion Seeking Authority to Sell or Otherwise Dispose of All of the Receivership Assets was approved, the Receiver  conducted negotiations with numerous private parties attempting to sell both oil and gas and real property assets.  During this reporting period, the Receiver has finalized negotiations and closed the sale of its interests in Sedona-operated oil and gas properties in Dawson County, Texas. In addition, the Receiver

---

[1] The billing cycle of the Receiver's professionals are only being submitted through May 31, 2017, rather than through the calendar quarter of June 2017.  The same will be true for the Standardized Fund Accounting Report ("SFAR") ,attached hereto as Exhibit A, due to the fact that well and lease operating expenses lag, at a minimum, thirty (30) days behind revenue recognition and thus May 31, 2017 is the latest date in which the Receiver can report a complete financial statement containing all relevant information.  Consequently, the Receiver and her professionals are only submitting fee applications through the same date, May 31, 2017.

RECEIVER'S SIXTH QUARTERLY FEE APPLICATION – Page 2

completed negotiations and closed the sale of the residential property in Lamesa, Texas. Negotiation of the Purchase and Sale Agreement and Assignment and Bill of Sale with the high bidder for the Compass-operated oil and gas properties in Dawson County is ongoing but has been delayed in part pending resolution of material title issues discovered during due diligence and pending review and reconciliation of Operator's expenses and revenue netting and past period adjustments.  The Receiver has received expressions of interest from parties regarding acquisition of one or more of the six Texas inactive wells for which Sedona remains the Operator of record with the Texas Railroad Commission and thus is responsible for ongoing regulatory compliance and reporting as well as future plugging and abandonment.  Disposition plans regarding these Texas inactive wells, including but not limited to any transactions with these parties, are expected to be finalized in the near future.  As to the three remaining oil and gas properties subject to secured claims of the operators of the properties, the Receiver is continuing to pursue transactions to convey the Receivership's interest in return for waiving all secured claims and assumption of other liabilities as well as investigating other alternatives.

      (c)     The Receiver is exploring a variety of options with the Oil and Gas Asset Clearinghouse as alternatives to the negotiated private sale or disposition of oil and gas assets, as appropriate.

      (d)     During this reporting period the Receiver, working with her state-specific oil and gas operations consultants, is continuing to manage prudent operation of  oil and gas wells , perform the  regulatory compliance and reporting responsibilities required by the states for the active and inactive wells and  effectively resolve operational issues.

## STATUS OF ASSETS

### DAWSON COUNTY, TEXAS

During the subject time period, the following Sedona-operated wells and leases were sold. In addition, the transfer of the Operator of record (and accompanying responsibilities) for these wells to another operator was approved by the Texas Railroad Commission.

Holder Lease, the three (3) producing wells and a fourth non-producing well:

- Holder #1
- Holder #2
- Holder #3
- Holder #4 (cannot be produced because the location does not meet Texas Railroad Commission ("RRC") requirements - it was drilled too close to the #2 and #3).

Double Diamond Lease and the following three wells:

- Double Diamond #1A
- Double Diamond #2
- Double Diamond #3

Triple Seven Well (temporarily abandoned well but appears to be a candidate for conversion to a salt water disposal well to accept salt water produced from the Holder wells).

### Red Ruby Well

Sedona is the operator of record for the Red Ruby well, an inactive well (see Inactive Wells section below). Although it was not included in the above-mentioned transaction, the Receiver has received expressions of interest regarding this well and the Receiver expects to receive one or more proposals in the near term.

### Compass Energy-operated Wells

Negotiation of the Purchase and Sale Agreement for the acquisition of the following Compass-operated Dawson County wells in which Sedona or CTX Energy LLC owns an interest has been ongoing:

- Snell Adams
- Perry 47-1

- Perry 47-2
- Snell 3605
- Snell 3606

However, negotiations were delayed and made more complicated due to the required resolution of material title issues discovered during due diligence. The title issues raised appeared to adversely affect the quantum of ownership interests in three of the five wells. In addition, the lengthy time required for the review and reconciliation of Operator's expenses and revenue netting and past period adjustments contributed to further delay in negotiations and drafting of appropriate provisions for the agreement.

The Receiver successfully identified the unrecorded contracts supporting the transfer of the missing record interests in two wells and secured the recorded conveyances required to cure the title defects asserted. However, the Receiver determined the reduced ownership interest asserted by the prospective purchaser for the third well was the accurate quantum of interest owned by the Receivership. Record title to portions of the interest attributed to Sedona by the Operator actually is owned by certain Sedona investors and, therefore, cannot be sold by the Receiver.  The Receiver notified all parties involved of this updated ownership information and appropriate adjustments are being made by the Operator to reflect the record owners and interests.  The prospective purchaser is reviewing and reevaluating the reduced ownership interest available for purchase as well as the uncertain results from Operator's major work on the same well during this reporting period (historically the largest volume well among the five wells in the sale). [2]

**Residential Real Estate**

The Closing of the Receiver's sale of the the house located at 205 Highland, Lamesa, Texas occurred in March, 2017.

---

[2] At the time of this filing, the Receiver has determined that due to the changes in the assets and the reduction in purchase price offered by the prospective purchaser, it is in the best interest of the Receivership Estate to offer the Compass-operated wells for sale via the Clearinghouse auction.

RECEIVER'S SIXTH QUARTERLY FEE APPLICATION – Page 5

## CONCHO COUNTY, TEXAS

### Roy Rauch Lease

The Roy Rauch #3 well appears to have been the well for which Sedona was most recently raising and accumulating funds for the purpose of completing the well. The #3 well is one of two wells on the Roy Rauch lease:

- Roy Rauch #2 well
- Roy Rauch #3 well

As reported for the prior quarter, the Receiver closed the transaction with the operator of record, Concho Oilfield Services and Operating Company, that included release of the operator's recorded secured lien, the operator agreeing to pay all unpaid property taxes for a transfer of the ownership of the Rauch property and two vacant lots in Eden, Texas (which had a nominal assessed value).

## HARDIN COUNTY, TEXAS

As reported previously, the Receiver and H.E.R. Operating, LLC completed the conveyance of Sedona's interest, if any, in the McBride Fee property, the Hooks property and the contract rights to dispose in the Cruse injection wells in exchange for the release of H.E.R's claim for the unpaid McBride well expenses, and the transfer to H.E.R. of operator of record responsibilities for the Hooks and Cruse wells, including assuming all plugging and abandonment liabilities.

## HIDALGO COUNTY, TEXAS

Fordyce is the operator of record of a well in which Sedona has an interest. However, the production is nominal and revenues are being applied to Sedona's unpaid portion of the expenses:

- Devon #2 well - total production averages 13 Mcf/d

Sedona has a 35% WI (26.25% NRI).

RECEIVER'S SIXTH QUARTERLY FEE APPLICATION – Page 6

The Receiver is exploring options for this well.

## TEXAS INACTIVE WELLS

The Receivership includes six (6) inactive wells located in the state of Texas. Sedona is the operator of record for all six wells listed below. It is unlikely there is much value in these wells as they currently exist. A third-party has expressed interest in these inactive wells. In addition to the possibility of a sale to a third-party, the Receiver is continuing to explore other options for these wells, including plugging and abandonment, and will advise the Court.

- Ruby Red #1 in Dawson County (API #11533302).
- Texaco/Meeker #2 in Hardin County (API #19932765)
- Mauritz #1 in Jackson County (API #23933102)
- Kurtz #1 in Lavaca County (API #28533523)
- Hankamer, E.C. B #16 in Newton County (API #35100329)
- Hankamer E.C. B #15 in Newton County (API #34100330)

### CONCORDIA PARISH, LOUISIANA

As reported previously, the Receiver and CTR Oil, Inc. completed the conveyance of Sedona's interest, if any, in the Quinn 5 #1 well to CTR and the transfer of the responsibilities of operator of this well to CTR Oil, Inc. in exchange for assuming all responsibilities of operator, including plugging and abandonment liabilities. In addition, CTR has assumed responsibility for compliance with a recent Compliance Order issued by the Louisiana Department of Natural Resources Office of Conservation requiring compliance by December 2016.

### CUMBERLAND COUNTY, KENTUCKY

**Collins (Hurd) Lease** – historically averages 2 1/2 B/D aggregate total from the following wells in which Sedona has a 92.5% WI (77.55% NRI):

- Collins # 3
- Collins # 6

RECEIVER'S SIXTH QUARTERLY FEE APPLICATION – Page 7

- Collins # 8
- Collins #14
- Collins #15 (not producing due to operational issues).

Storm Resources LLC is the operator of record. Under prevailing local crude oil prices in the area and with operating costs comparable to other wells in this area, each of these wells needs to produce more than 1 B/D to be sustainable. The Receiver has received a proposal from the operator involving release of the operator's claims for unpaid well expenses but supporting documentation as to such expenses has not yet been submitted. The operator's attorney is optimistic that this information can be provided in the near future.

### OVERTON AND PICKETT COUNTIES, TENNESSEE

**Sells Wells**

- Sells #2   Shut in due to electric motor failure, uneconomic to repair and operate at current crude oil prices. Prior to shut in, produced 1-1 ½ B/D.

- Sells #3   Candidate for plugging.

- Sells #4   Shut in due to electric motor failure, uneconomic to repair and operate at current crude oil prices. Prior to shut in, produced ¼ - ½ B/D.

J3 Natural Resources is the operator of record for the Sells wells. As reported previously, J3 advised the Receiver that the lease would expire by its own terms at the end of its term in October 2016 unless the pricing environment improved sufficiently to make the wells economic to produce and maintain the lease. The wells remained uneconomic due to the pricing environment, the lease expired in October 2016 and J3 is responsible for plugging and abandoning these wells.

**Jimmy Young Wells**

- Jimmy Young #7

- Jimmy Young #3

TN Oil Co. is the operator of record. These wells are small volume oil producers and,

based upon the available records, appear to have positive value. The Receiver has determined that the record title ownership interest in each of these wells is 3%, not the 24% reflected in the payment records of the oil purchaser and the operator. The Receiver has identified the other record title owners (each a Sedona investor) and the corresponding quantum of interest owned by each and communicated this information to each owner. Once the Receiver obtains the requested information from the Operator as to expenses attributable to the interest, the Receiver will prepare the statement of revenues and expenses for each owner and finalize accounts with each record owner. The Receiver is exploring the possibility of a negotiated deal with the operator similar to the transactions negotiated with other operators with a secured claim.

### MISCELLANEOUS J3 WELLS

As reported previously, the Receiver and J3's successor operator, Crude LLC (operator of record of the Kentucky properties set forth below) completed the conveyance of CTX Energy LLC's interest, if any, in the Kentucky properties set forth below in exchange for Crude LLC releasing its claim for unpaid well expenses and assuming all liabilities, including all plugging and abandonment liabilities.

Clinton County, Kentucky

- Emily Wall #2
- Warren Wallace #1 IGR
- Warren Wallace #1 CTX

Cumberland/Monroe County, Kentucky

- Michael Boyles wells #1CTX,1,3 & CS2

Based on information from former operator, J3 Natural Resources, the following Tennessee wells are no longer active. The Receiver is in the process of obtaining records confirming that each well has been plugged and abandoned or, if not, that CTX Energy LLC has no responsibility for any liabilities, including plugging and abandonment.

<u>Overton County, Tennessee</u>

- William Decker #1CTX
- Jonathan McDonald #JM1
- Clema Hunter #1
- Douglas Wright #1CTX

7. Despite Sedona's lack of industry standard recordkeeping, the Receiver has identified, and taken steps to notify, all of the investors and/or creditors whose information was contained in Sedona's files or who have contacted the Receiver post-receivership.[3]

8. There are a few additional miscellaneous points that are required to be included in this Application under the Billing Procedures and/or the Order Appointing Receiver:

(a) This is the sixth application presented by the Receiver.

(b) With regard to communications with investors, the Receiver sent notification of the claims process to over seven hundred (700) names located in Sedona's software tracking system, Roughneck.

(c) The Receiver has continued to update her website, providing investors with copies of relevant pleadings, periodic updates, and an address, telephone number and e-mail address to communicate with the Receiver.  Additionally, claim forms were uploaded to the website for investor use.

**AMOUNT REQUESTED**

9. For the reasons set forth above, the Receiver believes that a number of the efforts reflected in these expenses were undertaken in the best interest of the Receivership Estate and will bear fruit in the future.  The Receiver proposes a holdback of 20% of Munsch Hardt's, LSS&M's and the Receiver's invoices contemplated by the Order Appointing Receiver, such

---

[3] In June 2016, the Receiver also sent approximately 700 claim forms to this constituency, which are to be returned no later than August 31, 2016 unless an extension is granted.  Upon analyzing the returned claim forms, the Receiver anticipates filing a plan of distribution on or about August 31, 2017 or upon finalizing the remaining material sales and disposition transactions, if later.

RECEIVER'S SIXTH QUARTERLY FEE APPLICATION – Page 10

that the amount sought at this time is $57,918.80 in fees and $199.86 in expenses for a total of $58,118.66 and the proposed holdback is $14,479.70.

10. The Receiver further requests approval of the entire amount as reasonable and necessary and subject accordingly to payment as the assets and the anticipated recoveries may allow and the Court may direct. The entire amount is $72,598.36, as shown on the following chart and more specifically in Exhibit "B" hereto:

| Firm | Invoice Thru | Fees | Expenses | Totals |
|---|---|---|---|---|
| Munsch Hardt | May 31, 2017 | $16,460.00 | $54.86 | $16,514.86 |
| Becky McGee | May 31, 2017 | $50,310.00 | -0- | $50,310.00 |
| Litzler Segner | May 31, 2017 | $5,628.50 | $145.00 | $5,773.50 |
| | | | Total | $72,598.36 |

## SUMMARY OF WORK PERFORMED

11. The invoices attached in Exhibit "B" have time detail entries that are consistent with the Billing Instructions, and which accordingly provide the rates charged, the time spent, a description by entry of the work performed, and also classifies the work according to certain task codes.

12. The primary focus of the Receiver during the period covered by this report has been to continue to perform the operations, compliance and regulatory reporting responsibilities for the oil and gas wells, identify and negotiate the sale or disposition of the assets, prepare recommendations to this Court for the sale and/or disposition of all of the Receivership Assets, mail out and analyze claim forms from investors, and reduce administrative expenses wherever possible.

13. In addition to ongoing management and preservation of the assets, other effective actions taken during the period covered by this report include the following:

- The Receiver has continued to accept, compile and analyze claim forms from investors and creditors.

- The Receiver has conducted negotiations with numerous private parties to sell both oil and gas and real property assets. For certain oil and gas assets, the Receiver has reached agreements with secured parties to convey the Receivership's interest in return for waiving all secured claims and assumption of other liabilities.

- The Receiver has continued discussions with the Oil and Gas Clearinghouse as to alternatives for the unsold oil and gas assets.

- The Receiver marketed and sold the single family dwelling located in Lamesa, Texas.

- The Receiver marketed and subsequently sold the Holder and Double Diamond Leases and Wells pursuant to this Court's authorization.

The Receiver is continuing actions to preserve the value of the Receivership assets and at the same time make these assets more valuable to a subsequent owner.

14. The Receiver has consolidated all cash in an account opened for the Receivership at Union Bank. The balance as of May 31, 2017 was $1,084,441.36.

15. The Receiver has continued its assessment of Sedona's ownership, regulatory/compliance and operational records in an attempt to continue her analysis of the status and viability of the various oil and gas wells being operated by, or on behalf of, Sedona. The Receiver has spoken directly with a number of field contractors, oil and gas purchasers, and regulatory agency officials as have the state-specific oil and gas consultants assisting the Receiver in analyzing the status of various oil and gas wells, filing the required regulatory filings and exploring methods to preserve, and where applicable, enhance, prudently operate, monetize and dispose of these assets. In the Status of Assets section, the Receiver addresses these issues in more detail.

16. The Receiver sent claim forms to approximately seven hundred (700) investors and/or creditors, whose names and contact information were extracted from the Defendants' oil

and gas software, known as Roughneck. Approximately one hundred seventy-one (171) of these forms have been returned as of the end of this reporting period.

17. The Receiver and her counsel received and responded to numerous communications from investors.

## APPLICATION OF JOHNSON FACTORS

18. The primary concern in an attorney's fee case is that the fee awarded be reasonable. *Blum v. Stenson,* 465 U.S. 886, 893 (1984). In this Circuit, the applicable test is set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Under that test, a court must first determine the loadstar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted by various factors.

19. The following reviews this Application with regard to each of the *Johnson* factors:

(a) <u>The time and labor required</u>. The time and labor required are set forth in detail in the statements contained in Exhibit "B." The Receiver invites the Court to review those statements in detail. Further, the invoices are summarized above.

(b) <u>The novelty and difficulty of the questions</u>. The questions addressed by the professionals herein are common to enforcement receiverships generally, although the employee healthcare and Texas Workforce Commission issues were unique. The level of difficulty of the issues was such that many of them required the attention of a more senior professional.

(c) <u>The requisite skill to perform the service</u>. The Receiver believes that the services performed in this case have required individuals possessing considerable experience in business transactions, investment fraud, oil and gas business and funds tracing. The Receiver, her counsel, and her accountant and trustee support firm have considerable experience in these areas.

(d) <u>The preclusion of other employment due to the acceptance of the case</u>. The Receiver and her professionals have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e) <u>The customary fee</u>. The hourly rates sought herein are at least commensurate with the rates charged by other practitioners of similar experience levels in the Northern District of Texas and in the case of the Receiver and her professionals. With regard to her counsel, the rates represent a thirty-seven percent reduction from their standard rates, which was agreed to at the request of the Commission, and approved without objection by this Court at the genesis of this case.

(f) <u>Whether the fee is fixed or contingent</u>. The Receiver and her professionals' fees are fixed insofar as monies exist by way of receivership assets from which to pay such fees. Payment of such fees, however, is subject to Court approval, and is contingent upon the availability of receivership assets, as evidenced by the holdback suggested by the Receiver.

(g) <u>Time limitations imposed by the Client or other circumstances</u>. The time requirements during the period covered by this Application have been substantial, although in most respects they have decreased from the emergent nature of the first few weeks of the receivership.

(h) <u>The amount involved and the results obtained</u>. The amount involved in this case can be measured in a number of ways. Obviously, there were six investment offerings worth approximately $3.3 million having been raised, which has impacted approximately 55 investors, numerous creditors, and other parties.

(i) <u>The experience, reputation and ability of the attorneys</u>. Munsch Hardt is a broad-based commercial firm with substantial experience in the handling of matters generally related to civil trial law, dispute resolution, bankruptcy and general workout matters. The

RECEIVER'S SIXTH QUARTERLY FEE APPLICATION – Page 14

practice of the attorneys specifically in this case regularly includes the representation of investors and other persons involved in business transactions in which the investors or other parties are victims or aggrieved in some fashion. Receiver and her counsel have also participated in other large enforcement receiverships. The reputations of the Receiver and her counsel are recognized and respected in their community and area of practice.

(j)   <u>The undesirability of the case</u>.  The service as Receiver and the representation of the Receiver incident to this case has not been undesirable.

(k)   <u>The nature and length of the professional relationship with the client</u>. This is not a factor with regard to this engagement.

(l)   <u>Award in similar cases</u>.  The Receiver submits that the fees requested in this case are commensurate with awards approved in comparable cases in this district.

## **CERTIFICATION**

As required by the Order Appointing Receiver, the undersigned hereby certifies that the fees and expenses incurred herein and reflected on this Application were incurred in the best interests of the Receivership Estate; and (with the exception of the Billing Instructions agreed to with the Commission) the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation to be paid or to be paid from the Receivership Estate, or any sharing thereof. Additionally, as required by the Billing Instructions, the undersigned hereby additionally certifies that she has read this Application, that to the best of her knowledge, information and belief formed after a reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions, that all fees contained in the Application are based on the rates listed in the Applicant's original fee schedule and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed, that she has not included in the amount for which reimbursement is sought the amortization of the cost of any investment,

equipment, or capital outlay (except to the extent such may exist in the permitted allowable amounts set forth in the Billing Instructions with regard to photocopies), and in seeking reimbursement for a service which was justifiably purchased or contracted for a professional from a third party, she requests reimbursement only for the amount billed by and paid to the vendor and she is not making a profit on any reimbursable services provided by her.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Receiver requests that this Court approve all of the fees and expenses as set forth herein and for such other and further relief, general and special, at law or in equity, to which the Receiver may be justly entitled.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Lincoln Plaza
500 North Akard Street
Dallas, TX 75201-6659
(214) 740-5108
(214) 855-7584 (facsimile)
droossien@munsch.com

By: */s/ James M. McGee* _____
Dennis L. Roossien, Jr.
Bar No. 00784873
James M. McGee
Bar No. 13613220

ATTORNEYS FOR BECKY MCGEE,
COURT APPOINTED RECEIVER

## CERTIFICATE OF SERVICE

    I hereby certify that on the 15th day of August, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                           */s/ James M. McGee*
                                           James M. McGee