IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil No.: 3-16-CV-0172L |
| KENNETH W. CRUMBLEY, JR. and SEDONA OIL & GAS CORPORATION, | § § § § | |
| Defendants. | § | |

## RECEIVER'S EIGHTH QUARTERLY FEE APPLICATION

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Receiver Becky McGee ("Receiver") submits this Eighth Quarterly Fee Application, respectfully stating:

### INTRODUCTION

1. This Application is tendered pursuant to the procedures established in the Order Appointing Receiver (Dkt. 14 at pgs. 19-20, ¶¶ 41-44).

2. The Receiver, in taking this appointment, agreed to be subject to these procedures, as well as to certain Billing Instructions. Consistent with the appointment order and those instructions, the Receiver has previously tendered this Application for review by the Securities and Exchange Commission ("Commission"), and has addressed any concerns raised by the Commission prior to the filing of this Application.

3. The procedures also provide that all Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. The procedures further provide that the Court may direct that the Receiver hold back 20% of the amounts set forth in this Application pending a final application submitted at the end of the case.

## PERIOD COVERED BY APPLICATION

4. This Application seeks the Court's approval of the invoices received by the Receiver from professionals retained by her for the time period of September 1, 2017 through November 30, 2017 (the "past Quarter").[1]

## STATUS OF RECEIVERSHIP

5. The Order Appointing Receiver also provides that the Receiver is to file Quarterly Status Reports (Dkt. 14 at 17-18), which the Receiver has recently done with regard to the same period covered by this Application (Dkt. 67). The Quarterly Status Report is designed to provide the Court with detailed information as to the status of the receivership, and the timing of its submission allows the Court to have a full report available to it in considering this Application. The Receiver would accordingly incorporate such report by reference, and encourage the Court to review that report in connection with the Court's consideration of this Application.

6. The Receiver would specifically underscore a few points by way of overview in addition to the Quarterly Status Report:

(a) The Receiver has continued to accept, compile and analyze claim forms from investors and creditors. Many of the investor claim form filings include the investor's net loss claim as to each of several different programs resulting in well over 300 net loss claims analyzed – almost double the 176 claim forms received.

(b) After the Receiver's Motion Seeking Authority to Sell or Otherwise Dispose of All of the Receivership Assets was approved, the Receiver conducted negotiations with numerous private parties attempting to sell both oil and gas and real property assets. During

---

[1] The billing cycle of the Receiver's professionals are only being submitted through November 30, 2017, rather than through the calendar quarter of December 2017. The same will be true for the Standardized Fund Accounting Report ("SFAR") ,attached hereto as Exhibit A, due to the fact that well and lease operating expenses lag, at a minimum, thirty (30) days behind revenue recognition and thus November 30, 2017 is the latest date in which the Receiver can report a complete financial statement containing all relevant information. Consequently, the Receiver and her professionals are only submitting fee applications through the same date, November 30, 2017.

this reporting period, interests in the Compass-operated oil and gas properties in Dawson County, Texas have been listed in the Oil & Gas Asset Clearinghouse ("Clearinghouse") auction. In addition, the Receiver completed negotiations with the Clearinghouse to include the interests in the Cumberland County, Kentucky Collins wells.[2] As to the two other oil and gas properties subject to secured claims of the operators of the properties, the Receiver continued to pursue transactions to convey the Receivership's interest in return for waiving all secured claims and assumption of other liabilities as well as investigating other alternatives. During this reporting period the Receiver determined that such a transaction was not likely with the operator of the properties in Overton County, Tennessee and that auction of the assets through the Clearinghouse would be in the best interest of the Receivership Estate. The Receiver will report on the status of such a transaction with the operator of the other property, the Devon #2 well in Texas, in the next report. Prior to the end of this reporting period, the auction of the properties produced the sale of the interests in the Overton County, Tennessee properties for $ 8,000.00 and the sale of the interests in the Dawson County, Texas properties for $70,000.00. In each instance the purchaser assumed all liabilities, including plugging and abandonment liabilities.

(c) The Receiver has received expressions of interest from multiple parties regarding acquisition of or plugging bids for one or more of the six Texas inactive wells for which Sedona remains the Operator of record with the Texas Railroad Commission. The Operator of record is responsible for ongoing regulatory compliance and reporting as well as future plugging and abandonment. Disposition plans regarding these Texas inactive wells, including but not limited to any transactions with these parties, are expected to be finalized in the near future.

---

[2] Regarding the Collins wells, the Receiver has reserved her right to accept a proposal from the Operator involving release of the Operator's claims from paid well expenses, if this offer would yield a higher result to the Receivership.

RECEIVER'S EIGHTH QUARTERLY FEE APPLICATION – Page 3

(d) During this reporting period the Receiver, working with her state-specific oil and gas operations consultant, is continuing to perform the regulatory compliance and reporting responsibilities required for the inactive wells and effectively resolve any issues.

(e) The Receiver has continued to work with the Texas Railroad Commission in order to determine what, if any, agreement can be reached with the Railroad Commission on the plugging and abandonment liability for the six inactive wells.

(f) The Receiver has also worked to prepare a plan of distribution and motion to terminate the Receivership, which the Receiver anticipates filing in February 2018.

## STATUS OF ASSETS

**DAWSON COUNTY, TEXAS**

The following Sedona-operated wells and leases have been sold. In addition, the transfer of the Operator of record (and accompanying responsibilities) for these wells to another operator was approved by the Texas Railroad Commission.

Holder Lease, the three (3) producing wells and a fourth non-producing well:

- Holder #1
- Holder #2
- Holder #3
- Holder #4 (cannot be produced because the location does not meet Texas Railroad Commission ("RRC") requirements - it was drilled too close to the #2 and #3).

Double Diamond Lease and the following three wells:

- Double Diamond #1A
- Double Diamond #2
- Double Diamond #3

Triple Seven Well (temporarily abandoned well but appears to be a candidate for conversion to a salt water disposal well to accept salt water produced from the Holder wells).

**Red Ruby Well**

Sedona is the operator of record for the Red Ruby well, an inactive well (see Inactive Wells section below).  Although it was <u>not</u> included in the above-mentioned transaction and the Receiver received other expressions of interest regarding this well, an acceptable proposal has not yet been received.

**Compass Energy-operated Wells**

As stated above,  the following Compass-operated Dawson County wells in which Sedona or CTX Energy LLC owns an interest have been sold via the Clearinghouse auction:

- Snell Adams
- Perry 47-1
- Perry 47-2
- Snell 3605
- Snell 3606

As previously reported, after the prospective private party purchaser reviewed and reevaluated the reduced ownership interest available for purchase as well as the uncertain results from Operator's major work on the same well (historically the largest volume well among the five wells in the sale), it reduced its purchase price offer significantly.  The Receiver determined that due to the changes in the assets and the reduction in purchase price offered by the prospective purchaser,[3] it was in the best interest of the Receivership Estate to offer the Compass-operated wells for sale via the Clearinghouse auction.  These properties were successfully sold through the auction for a purchase price of $70,000.00.

---

[3] For details related to the changes in the assets and the reduction in purchase price offered by the prospective purchaser, please see page 5 of the Receiver's Seventh Quarterly Fee Application [Dkt. #62].  Additionally, the title to portions of the interest previously attributed to Sedona by the Operator actually were owned by certain Sedona investors and, therefore, cannot be sold by the Receiver.  The Receiver notified all parties involved of this updated ownership information and appropriate adjustments are being made by the Operator to reflect the record owners and interest.

RECEIVER'S EIGHTH QUARTERLY FEE APPLICATION – Page 5

**Residential Real Estate**

The Closing of the Receiver's sale of the house located at 205 Highland, Lamesa, Texas occurred in March, 2017.

## CONCHO COUNTY, TEXAS

**Roy Rauch Lease**

The Roy Rauch #3 well appears to have been the well for which Sedona was most recently raising and accumulating funds for the purpose of completing the well. The #3 well is one of two wells on the Roy Rauch lease:

- Roy Rauch #2 well
- Roy Rauch #3 well

As reported for the prior quarter, the Receiver closed the transaction with the operator of record, Concho Oilfield Services and Operating Company, that included release of the operator's recorded secured lien, the operator agreeing to pay all unpaid property taxes for a transfer of the ownership of the Rauch property and two vacant lots in Eden, Texas (which had a nominal assessed value).

## HARDIN COUNTY, TEXAS

As reported previously, the Receiver and H.E.R. Operating, LLC completed the conveyance of Sedona's interest, if any, in the McBride Fee property, the Hooks property and the contract rights to dispose in the Cruse injection wells in exchange for the release of H.E.R's claim for the unpaid McBride well expenses, and the transfer to H.E.R. of operator of record responsibilities for the Hooks and Cruse wells, including assuming all plugging and abandonment liabilities.

## HIDALGO COUNTY, TEXAS

Fordyce is the operator of record of a well in which Sedona has an interest. However, the production is nominal and revenues are being applied to Sedona's unpaid portion of the

expenses:

- Devon #2 well - total production averages 13 Mcf/d

Sedona has a 35% WI (26.25% NRI).

This property is a candidate for a negotiated transaction with the operator as described above. The status will be updated in the next report.[4]

### TEXAS INACTIVE WELLS

The Receivership includes six (6) inactive wells located in the state of Texas. Sedona is the operator of record for all six wells listed below. It is unlikely there is much value in these wells as they currently exist. Third-party expressions of interest in these inactive wells have been received. In addition to the possibility of a sale to one or more of these third-parties, the Receiver is continuing to explore other options for these wells, including plugging and abandonment, and has initiated discussions with the Railroad Commission of Texas.

The Receiver has received plugging estimates from Commission-authorized service companies and is continuing her discussion with the Railroad Commission in an attempt to reach a mutually agreeable resolution.

- Ruby Red #1 in Dawson County (API #11533302).
- Texaco/Meeker #2 in Hardin County (API #19932765)
- Mauritz #1 in Jackson County (API #23933102)
- Kurtz #1 in Lavaca County (API #28533523)
- Hankamer, E.C. B #16 in Newton County (API #35100329)
- Hankamer E.C. B #15 in Newton County (API #34100330)

### CONCORDIA PARISH, LOUISIANA

As reported previously, the Receiver and CTR Oil, Inc. completed the conveyance of Sedona's interest, if any, in the Quinn 5 #1 well to CTR and the transfer of the responsibilities of operator of this well to CTR Oil, Inc. in exchange for assuming all responsibilities of operator,

---

[4] At the time of filing this Report, the Receiver and Fordyce have reached agreement to convey the Receivership's interest in the property to Fordyce in return for Fordyce waiving all secured claims, including future plugging and abandonment costs, the parties are finalizing the conveyance instrument.

RECEIVER'S EIGHTH QUARTERLY FEE APPLICATION – Page 7

including plugging and abandonment liabilities. In addition, CTR has assumed responsibility for compliance with a recent Compliance Order issued by the Louisiana Department of Natural Resources Office of Conservation requiring compliance by December 2016.

### CUMBERLAND COUNTY, KENTUCKY

**Collins (Hurd) Lease** – historically averages 2 1/2 B/D aggregate total from the following wells in which Sedona has a 92.5% WI (77.55% NRI):

- Collins # 3
- Collins # 6
- Collins # 8
- Collins #14
- Collins #15 (not producing due to operational issues).

Storm Resources LLC is the operator of record. Under prevailing local crude oil prices in the area and with operating costs comparable to other wells in this area, each of these wells needs to produce more than 1 B/D to be sustainable. The Receiver included this property in the Clearinghouse auction but reserved the right not to sell in the auction if she determines it is in the best interest of the Receivership Estate to accept the proposal from the operator. As reported previously, the Receiver had received a proposal from the Operator involving release of the Operator's claims for unpaid well expenses, but supporting documentation as to such expenses has not yet been submitted. The auction resulted in only one bid and it was a nominal amount. Consequently, she concluded her agreement with the operator to transfer the properties to the operator releasing its claim for all unpaid well expenses (and including an identical release by the prior operator) and assuming liabilities, including future plugging and abandonment costs.

### OVERTON AND PICKETT COUNTIES, TENNESSEE

**Sells Wells**

- Sells #2   Shut in due to electric motor failure, uneconomic to repair and operate at current crude oil prices. Prior to shut in, produced 1-1 ½ B/D.

- Sells #3   Candidate for plugging.

- Sells #4  Shut in due to electric motor failure, uneconomic to repair and operate at current crude oil prices. Prior to shut in, produced ¼ - ½ B/D.

J3 Natural Resources is the operator of record for the Sells wells. As reported previously, J3 advised the Receiver that the lease would expire by its own terms at the end of its term in October 2016 unless the pricing environment improved sufficiently to make the wells economic to produce and maintain the lease. The wells remained uneconomic due to the pricing environment, the lease expired in October 2016 and J3 is responsible for plugging and abandoning these wells.

### Jimmy Young Wells

- Jimmy Young #7
- Jimmy Young #3
- Jimmy Young #1

TN Oil Co. is the operator of record. These wells are small volume oil producers and, based upon the available records, appear to have positive value. The Receiver determined that the record title ownership interest in each of these wells is 10% working interest and 9% net revenue interest, not the 30% WI and 24% NRI reflected in the payment records of the oil purchaser and the expense records of the operator. The Receiver has identified the other record title owners (each a Sedona investor) and the corresponding quantum of interest owned by each and communicated this information to each owner. During this reporting period, the Receiver obtained the requested information from the Operator as to expenses attributable to the period prior to and during the Receivership through September 2017. The Receiver is preparing the statement of revenues and expenses for each owner as to the period of the Receivership and will finalize and account to each record owner in the near term. The Receiver proposed a negotiated deal with the operator similar to the transactions negotiated with other operators with a secured claim but did not receive a response from the operator. The Receiver included the interests owned by the Receivership in the Clearinghouse auction and successfully auctioned the interests

RECEIVER'S EIGHTH QUARTERLY FEE APPLICATION – Page 9

in these properties for the price of $8,000.00.

### MISCELLANEOUS J3 WELLS

As reported previously, the Receiver and J3's successor operator, Crude LLC (operator of record of the Kentucky properties set forth below) completed the conveyance of CTX Energy LLC's interest, if any, in the Kentucky properties set forth below in exchange for Crude LLC releasing its claim for unpaid well expenses and assuming all liabilities, including all plugging and abandonment liabilities.

<u>Clinton County, Kentucky</u>

- Emily Wall #2
- Warren Wallace #1 IGR
- Warren Wallace #1 CTX

<u>Cumberland/Monroe County, Kentucky</u>

- Michael Boyles wells #1CTX,1,3 & CS2

Based on information from former operator, J3 Natural Resources, the following Tennessee wells are no longer active. The Receiver is in the process of obtaining records confirming that each well has been plugged and abandoned or, if not, that CTX Energy LLC has no responsibility for any liabilities, including plugging and abandonment.

<u>Overton County, Tennessee</u>

- William Decker #1CTX
- Jonathan McDonald #JM1
- Clema Hunter #1
- Douglas Wright #1CTX

7. Despite Sedona's lack of industry standard recordkeeping, the Receiver has identified, and taken steps to notify, all of the investors and/or creditors whose information was contained in Sedona's files or who have contacted the Receiver post-receivership.[5]

---

[5] In June 2016, the Receiver also sent approximately 700 claim forms to this constituency, which were to be returned no later than August 31, 2016 unless an extension is granted. Upon analyzing the returned claim forms, the Receiver anticipates filing a plan of distribution in February 2018.

RECEIVER'S EIGHTH QUARTERLY FEE APPLICATION – Page 10

8. There are a few additional miscellaneous points that are required to be included in this Application under the Billing Procedures and/or the Order Appointing Receiver:

(a) This is the eighth application presented by the Receiver.

(b) With regard to communications with investors, the Receiver sent notification of the claims process to over seven hundred (700) names located in Sedona's software tracking system, Roughneck.

(c) The Receiver has continued to update her website, providing investors with copies of relevant pleadings, periodic updates, and an address, telephone number and e-mail address to communicate with the Receiver. Additionally, claim forms were uploaded to the website for investor use.

## AMOUNT REQUESTED

9. For the reasons set forth above, the Receiver believes that a number of the efforts reflected in these expenses were undertaken in the best interest of the Receivership Estate and will bear fruit in the future. The Receiver proposes a holdback of 20% of Munsch Hardt's, LSS&M's and the Receiver's invoices contemplated by the Order Appointing Receiver, such that the amount sought at this time is $53,636.00 in fees and $189.15 in expenses for a total of $53,825.15 and the proposed holdback is $13,409.00.

10. The Receiver further requests approval of the entire amount as reasonable and necessary and subject accordingly to payment as the assets and the anticipated recoveries may allow and the Court may direct. The entire amount is $67,234.15, as shown on the following chart and more specifically in Exhibit "B" hereto:

| Firm | Invoice Thru | Fees | Expenses | Totals |
|---|---|---|---|---|
| Munsch Hardt | November 30, 2017 | $12,995.00 | $183.01 | $13,178.01 |
| Becky McGee | November 30, 2017 | $37,530.00 | -0- | $37,530.00 |
| Litzler Segner | November 30, 2017 | $16,520.00 | $6.14 | $16,526.14 |
| | | $67,045.00 | $189.15 | $67,234.15 |

RECEIVER'S EIGHTH QUARTERLY FEE APPLICATION – Page 11

**SUMMARY OF WORK PERFORMED**

11. The invoices attached in Exhibit "B" have time detail entries that are consistent with the Billing Instructions, and which accordingly provide the rates charged, the time spent, a description by entry of the work performed, and also classifies the work according to certain task codes.

12. The primary focus of the Receiver during the period covered by this report has been to continue to perform the operations, compliance and regulatory reporting responsibilities for the oil and gas wells, identify and negotiate the sale or disposition of the assets, analyze claim forms from investors and vendors, and reduce administrative expenses wherever possible.

13. In addition to ongoing management and preservation of the assets, other effective actions taken during the period covered by this report include the following:

- The Receiver has continued to accept, compile and analyze claim forms from investors and creditors.

- The Receiver has conducted negotiations for the sale or disposition of the oil and gas assets. For certain oil and gas assets, the Receiver has closed transactions with secured parties to convey the Receivership's interest in return for waiving all secured claims and assumption of other liabilities.

- The Receiver has reached agreements with the Clearinghouse for the auction of several oil and gas asset packages and compiled the asset records and data required for all of the data rooms for auction bidders due diligence.

- The Receiver secured alternative office space in the same office building at the same rent following the relocation requirement by the landlord.

- The Receiver is continuing actions to preserve the value of the Receivership assets and at the same time make these assets more valuable to a subsequent owner.

14. The Receiver has consolidated all cash in an account opened for the Receivership at Union Bank. The balance as of November 30, 2017 was $1,159,238.80.

15.     The Receiver sent claim forms to approximately seven hundred (700) investors and/or creditors, whose names and contact information were extracted from the Defendants' oil and gas software, known as Roughneck.  Approximately one hundred seventy-six (176) of these forms have been returned as of the end of this reporting period.  The Receiver anticipates filing her proposed Plan of Distribution in February 2018.

16.     The Receiver and her counsel received and responded to numerous communications from investors.

## APPLICATION OF JOHNSON FACTORS

17.     The primary concern in an attorney's fee case is that the fee awarded be reasonable. *Blum v. Stenson,* 465 U.S. 886, 893 (1984).  In this Circuit, the applicable test is set forth in *Johnson v. Georgia Hwy. Express, Inc*., 488 F.2d 714 (5th Cir. 1974).  Under that test, a court must first determine the loadstar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted by various factors.

18.     The following reviews this Application with regard to each of the *Johnson* factors:

(a)     The time and labor required. The time and labor required are set forth in detail in the statements contained in Exhibit "B."  The Receiver invites the Court to review those statements in detail.  Further, the invoices are summarized above.

(b)     The novelty and difficulty of the questions.  The questions addressed by the professionals herein are common to enforcement receiverships generally, although the employee healthcare and Texas Workforce Commission issues were unique.  The level of difficulty of the issues was such that many of them required the attention of a more senior professional.

(c) <u>The requisite skill to perform the service</u>. The Receiver believes that the services performed in this case have required individuals possessing considerable experience in business transactions, investment fraud, oil and gas business and funds tracing. The Receiver, her counsel, and her accountant have considerable experience in these areas.

(d) <u>The preclusion of other employment due to the acceptance of the case</u>. The Receiver and her professionals have not declined any representation solely because of their services as Receiver and counsel for the Receiver.

(e) <u>The customary fee</u>. The hourly rates sought herein are at least commensurate with the rates charged by other practitioners of similar experience levels in the Northern District of Texas and in the case of the Receiver and her professionals. With regard to her counsel, the rates represent a thirty-seven percent reduction from their standard rates, which was agreed to at the request of the Commission, and approved without objection by this Court at the genesis of this case.

(f) <u>Whether the fee is fixed or contingent</u>. The Receiver and her professionals' fees are fixed insofar as monies exist by way of receivership assets from which to pay such fees. Payment of such fees, however, is subject to Court approval, and is contingent upon the availability of receivership assets, as evidenced by the holdback suggested by the Receiver.

(g) <u>Time limitations imposed by the Client or other circumstances</u>. The time requirements during the period covered by this Application have been substantial, although in most respects they have decreased from the emergent nature of the first few weeks of the receivership.

(h) <u>The amount involved and the results obtained</u>. The amount involved in this case can be measured in a number of ways. Obviously, there were six investment offerings worth approximately $3.3 million having been raised referenced in the SEC's Complaint, which has impacted approximately 55 investors, numerous creditors, and other parties. However, the

RECEIVER'S EIGHTH QUARTERLY FEE APPLICATION – Page 14

Receiver was appointed over <u>all</u> the assets of Sedona Oil & Gas Corporation and Kenneth W. Crumbley, Jr., in addition to assets of CTX. This has required the Receiver to deal with all of the oil and gas properties set forth on pages 4-12, and the sale of a residential property. It has also required the Receiver to contact and evaluate the claims submitted by all investors, in addition to the 55 referenced in the SEC's Complaint.

(i)     <u>The experience, reputation and ability of the attorneys</u>.  Munsch Hardt is a broad-based commercial firm with substantial experience in the handling of matters generally related to civil trial law, dispute resolution, bankruptcy and general workout matters. The practice of the attorneys specifically in this case regularly includes the representation of investors and other persons involved in business transactions in which the investors or other parties are victims or aggrieved in some fashion. Receiver and her counsel have also participated in other large enforcement receiverships. The reputations of the Receiver and her counsel are recognized and respected in their community and area of practice.

(j)     <u>The undesirability of the case</u>.  The service as Receiver and the representation of the Receiver incident to this case has not been undesirable.

(k)     <u>The nature and length of the professional relationship with the client</u>. This is not a factor with regard to this engagement.

(l)     <u>Award in similar cases</u>.  The Receiver submits that the fees requested in this case are commensurate with awards approved in comparable cases in this district.

## **CERTIFICATION**

As required by the Order Appointing Receiver, the undersigned hereby certifies that the fees and expenses incurred herein and reflected on this Application were incurred in the best interests of the Receivership Estate; and (with the exception of the Billing Instructions agreed to with the Commission) the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation to be paid or to be

paid from the Receivership Estate, or any sharing thereof. Additionally, as required by the Billing Instructions, the undersigned hereby additionally certifies that she has read this Application, that to the best of her knowledge, information and belief formed after a reasonable inquiry, the Application and all fees and expenses herein are true and accurate and comply with the Billing Instructions, that all fees contained in the Application are based on the rates listed in the Applicant's original fee schedule and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed, that she has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent such may exist in the permitted allowable amounts set forth in the Billing Instructions with regard to photocopies), and in seeking reimbursement for a service which was justifiably purchased or contracted for a professional from a third party, she requests reimbursement only for the amount billed by and paid to the vendor and she is not making a profit on any reimbursable services provided by her.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Receiver requests that this Court approve all of the fees and expenses as set forth herein and for such other and further relief, general and special, at law or in equity, to which the Receiver may be justly entitled.

        Respectfully submitted,

        **MUNSCH HARDT KOPF & HARR, P.C.**
        3800 Lincoln Plaza
        500 North Akard Street
        Dallas, TX 75201-6659
        (214) 740-5108
        (214) 855-7584 (facsimile)
        droossien@munsch.com

        By:  */s/ James M. McGee* _____
        Dennis L. Roossien, Jr.
        Bar No. 00784873
        James M. McGee
        Bar No. 13613220

        ATTORNEYS FOR BECKY MCGEE,
        COURT APPOINTED RECEIVER

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 27th day of February, 2018, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

        */s/ James M. McGee*_____
        James M. McGee

4839-8256-1370v.1